**In re PENINSULA INTERNATIONAL CORP., Debtor.**

**PENINSULA INTERNATIONAL CORP. a Florida corporation, Plaintiff,**

**v.**

**CITIZENS AND SOUTHERN INTERNATIONAL BANK, an Edge Act corporation, Defendant.**

**Bankruptcy No. 82–00218–BKC–TCB.
Adv. No. 82–0123–BKC–TCB–A.**

United States Bankruptcy Court,
S. D. Florida.

April 1, 1982.

Scott L. Baena, Miami, Fla., for defendant.

Martin L. Sandler, Miami, Fla., for debtor/plaintiff.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

This chapter 11 debtor seeks a determination of the validity, priority and amount of the defendant bank's lien. (C.P. No. 1). The bank has answered with 11 affirmative defenses and prays that the automatic stay be lifted under 11 U.S.C. § 362(d). (C.P. No. 12). The matter was tried on March 18.

The bank has a valid first lien against all the debtor's inventory, accounts receivable and monies in the amount of $3,527,023, which was duly perfected on March 28, 1979. None of this is seriously disputed.

The real issue between these parties is the effect of a subsequent modification of the security agreement, a Memorandum of Agreement executed November 11, 1981, nearly two years after the original security agreement and three months before bankruptcy. The debtor says it is binding on the parties. The bank says it is not bound by the agreement. I agree with the debtor that the parties are bound by the Armistice agreement. I also conclude that there is no present ground to lift the stay.

■ The memorandum was hammered out by the parties and their counsel after a lengthy session of negotiation. It states all the essential terms of the agreement reached and was duly executed and witnessed by the parties. It recites, however, that:

> This memorandum shall be supplemented by the formal written agreement of the parties and by such instruments and further agreements as may be required to give effect hereto and thereto.... The parties shall forthwith and in no event later than November 21, 1981, enter into such formal agreements as may be necessary to give effect hereto."

Counsel made an effort to replace the five page Agreement with another, more imposing draft. They reached a stalemate but their clients have proceeded in accordance with their agreement.

The Agreement acknowledged that the bank had called its note. The debtor/borrower agreed to surrender to the bank its entire inventory for liquidation by the bank with the debtor's assistance during the next 12 months. The borrower agreed to deposit "all payments received" on existing or future accounts receivable with the bank against which it may charge its operating expenses. The borrower also pledged tax refunds, insurance proceeds, including a large policy on the life of its principal, and its best efforts during the year to maximize the liquidation.

In return, the bank agreed to defer its other remedies for the year and agreed to release the debtor's principals from their personal guaranties of the corporate debt:

> "At such time as $2,000,000 of the outstanding principal amount of indebtedness owed by the Borrower to the Bank has been repaid."

The bank also agreed that upon repayment of $2.75 million of the outstanding principal owed, all subsequent proceeds would be paid pro-rata to the bank and the borrower's preferred shareholders on the basis of the then outstanding principal balance due the bank and the capital investment of each shareholder. Finally, the bank agreed that:

> "(12) Upon the repayment in full of the principal indebtedness of the Borrower to the Bank, all proceeds thereafter realized upon the liquidation of the assets of the Borrower shall be payable to the Bank and the preferred shareholders of the Borrower pro-rata. Such distribution shall be on the basis of accrued interest and expense payable to the Bank and accrued dividends payable to the preferred shareholders."

The debtor/borrower turned over its inventory to the bank. However, the liquidation results have been disappointing to date. A total of about $255,000 has been credited to the debtor's account since the Agreement.

The bank argues first that the Agreement is no contract, that it is not a meeting of the minds but merely an agreement to negotiate further. I disagree. In the words of the Florida court in *Innkeepers*

*International, Inc. v. McCoy Motels, Ltd.,* Fla.App.1976, 324 So.2d 676, 678:

"A contract is not necessarily lacking in all effect because it expresses the idea that something is left to future agreement. An agreement to agree to do a certain specified thing, all the conditions and terms of the postponed agreement being specified is simply an agreement in praesenti to do it.

And quoting Corbin:

"If the parties have concluded a transaction in which it appears they intend to make a contract, the court should not frustrate their intention if it is possible to reach a fair and just result, even though this requires a choice among conflicting meanings and the filling of some gaps that the parties have left."

See also *Blackhawk Heating & Plumbing Co. Inc. v. Data Lease Financial Corp.,* Fla. 1974, 302 So.2d 404, 408.

■ The bank argues next that a provision in the Agreement providing for its termination if either party files for bankruptcy is applicable, notwithstanding § 365(e)(1)(B) rendering such clauses unenforceable, because the Agreement is:

"a contract to make a loan, or extend other debt financing or other financial accommodations."

within the exception provided by § 365(e)(2)(B). I disagree. The exception pertains only to executory commitments to extend future credit, not as is the case here to an executed extension of the time for repayment of a previous debt. H.R.Rep.No. 95–595, p. 347, U.S.Code Cong. & Admin. News 1978, p. 5787, Bkr.-L. Ed., Legislative History § 82:16. The bankruptcy clause in this Agreement is unenforceable.

■ The bank argues finally that the debtor/borrower breached the Agreement, entitling the bank to recission, by diverting a $300,000 account receivable to the set-off of an account payable owed to another creditor. I find that the debtor assigned the receivable to another creditor as a set-off, but it did so as a good faith business judgment recognizing that the two parties involved in this transaction were connected with one another. It has not been established that the debtor could or would have recovered the receivable other than as a set-off. This was an isolated transaction and there is no indication of a deliberate effort to defraud the bank of its collateral. The Agreement does not prohibit bonafide set-offs. It merely obligates the debtor to deposit with the bank "all payments *received*". The bank has not carried its burden of proving that the Agreement was breached by this transaction.

The bank has filled the air with other defenses which are either unsupported by the record or are merely restatements of the foregoing contentions. Its purpose is to keep the collateral placed in its possession under the Agreement and, at the same time, avoid its obligations under the Agreement.

It is elementary that the bank may not seek recission without surrendering the benefits it received by the Agreement. 11 *Fla.Jur.2d*, Contracts, § 180. Even if, therefore, there had been a breach of a dependent covenant by the debtor in this instance, and I have found none, the bank has not established its right to recission.

It follows that the November Agreement is valid, enforceable and binding on the parties.

■ The bank has sought modification of the automatic stay:

". . . because the Debtor does not have equity in any of the collateral pledged by it to Defendant and such collateral is not necessary to effect a liquidating plan under Section 1123 of title 11 of the United States Code."

The orderly liquidation value of the collateral was estimated six months ago to be worth $4.7 million. The bank has not proved that the debtor has no equity in the pledged collateral. The burden is on the bank to do so. § 362(g). Relief from the stay is denied. This court, of course, has jurisdiction to enforce the Agreement should either party require such relief.

I have to this point avoided an issue, which was warmly argued by the parties,

but which cannot be decided here because it involves a third party not before the court, the debtor's managing stockholders. The bank insists that it has the right to apply all payments received by it from liquidation first to its expenses and accrued interest and last to the principal debt. The debtor's attorney, loyal to the managing stockholders whose personal guaranties expire when $2 million of the principal debt has been repaid, argues that the payments are to be applied first toward principal.

This issue, if and when it arises, may be decided in an appropriate State court. Its decision is not necessary to the administration of this case. If it were necessary to pass on this point now, I would again disagree with the bank, because it is clear from paragraphs 10(b) and 12 of the Agreement that the parties contemplated all liquidation payments be applied first to principal. Otherwise, there could never be a prorata distribution as provided in those paragraphs.

As is required by B.R. 921(a), a separate judgment will be entered in accordance with this memorandum.