**In re TEXACO INC., Texaco Capital Inc., Texaco Capital N.V., Debtors.**

**Bankruptcy Nos. 87 B 20142–87 B 20144.**

United States Bankruptcy Court, S.D. New York.

May 29, 1987.

---

**5.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City (Ronald L. Cohen, of counsel), for The Chase Manhattan Bank, Indenture Trustee.

Weil, Gotshal & Manges, New York City (Steve Kurotkin, and Michael D. Zarin, of counsel), for debtors.

Kronish, Lieb, Weiner & Hellman, New York City (Richard Lieb, and E. Payson Clark, Jr., of counsel), for New York Life Ins. Co.

Strook & Strook & Lavan, New York City (Jack Gross, of counsel), for Morgan Guar. Trust.

Levin & Weintraub & Crames, New York City (Paul Nussbaum, of counsel), for Pennzoil Co.

Cleary, Gottlieb, Steen & Hamilton, New York City (Deborah Buell, of counsel), for Official Committee of Industry Unsecured Creditors.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

## DECISION ON MOTION OF INDENTURE TRUSTEE FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO AUTHORIZE ITS DELIVERY OF A NOTICE OF ACCELERATION

The Chase Manhattan Bank, N.A. ("Chase"), as Indenture Trustee and New York Life Insurance Company ("N.Y. Life"), a major holder of notes issued by the debtor, Texaco Capital Inc., under an Indenture of Trust, seek relief from the automatic stay pursuant to 11 U.S.C. § 362(d) and Bankruptcy Rules 4001 and 9014, so as to permit Chase, the Indenture Trustee, to deliver a Notice of Acceleration of the notes to Texaco Capital Inc. and to its corporate guarantor, Texaco Inc.

This controversy was submitted to the court for determination on May 27, 1987. A decision is necessary by May 31, 1987 because the movants wish to deliver the Notice of Acceleration before June 1, 1987.

## FACTS

On April 12, 1987, the debtor, Texaco Inc., and its two financial subsidiary corporations, Texaco Capital Inc. and Texaco Capital N.V., filed with this court petitions for reorganizational relief under Chapter 11 of the Bankruptcy Code. An order for joint administration of the estates pursuant to Bankruptcy Rule 1015 was entered the same day.

In its Chapter 11 petition, the debtor, Texaco Inc., lists its assets to be worth $18,337,425,000 on a cost basis and its total liabilities, including contingent liabilities and a judgment in favor of Pennzoil Company, to be $15,082,972,000. The debtor, Texaco Capital Inc., is a wholly owned subsidiary of Texaco Inc., and is engaged in the business of borrowing funds and lending such funds to Texaco Inc. or its subsidiaries for general corporate purposes. The Chapter 11 petition filed by Texaco Capital Inc. reflects total assets of $4,264,129,000 and liabilities of $4,252,428,000.

Texaco Inc., a Delaware corporation, maintains its principal executive offices at 2000 Westchester Avenue, White Plains, New York. Texaco Capital Inc. states that venue is proper in this court pursuant to 28 U.S.C. § 1408(2) because there is pending in this district a case under title 11 concerning its parent company, Texaco Inc.

Pursuant to an Indenture dated June 27, 1983, between Texaco Capital Inc. and Chase, as trustee, the former issued a series of securities designated as "Extendible Notes Due 1999" (the "Notes"). The aggregate principal amount of the Notes authorized to be outstanding at any one time is limited to $500,000,000. The initial annual interest rate through May 31, 1987 is 13.25% payable semiannually on June 1 and December 1, beginning December 1, 1984. The additional interest periods after May 31, 1987 shall be such periods of one or more whole years commencing June 1, 1987 as shall be selected by Texaco Capital Inc.

Several weeks after the filing of its Chapter 11 petition, Texaco Capital Inc. issued an Officers' Certificate dated April 30, 1987, setting forth the interest rate it

would have established for the Notes, but for the commencement of the Chapter 11 case, for the period June 1, 1987 through May 31, 1988, to be at the rate of 7.75%.

Pursuant to the Indenture each Note holder had until May 15, 1987 to elect either to continue to hold the Notes and collect interest at the new rate from June 1, 1987, or to tender the Notes to Texaco Capital Inc. and demand repayment of all principal and accrued interest to June 1, 1987.

On May 8, 1987, Texaco Capital Inc. entered into a stipulation with Chase and various interested entities which this court approved, permitting the holders of Notes to tender such Notes without violating the automatic stay provided for in 11 U.S.C. § 362(a). The stipulation also preserves the rights of all parties with respect to the Notes and the effect, if any, of any tender of the Notes.

Pursuant to Section 6.02 of the Indenture dated June 27, 1983, upon the occurrence and continuation of an "Event of Default", the Indenture Trustee may declare the principal and accrued interest in all Notes to be due and payable immediately. An "Event of Default" is defined in Section 6.01(4)(A) to occur when "the Company or the Guarantor pursuant to or within the meaning of any Bankruptcy Law:

(A) commences a voluntary case."

The Indenture Trustee's right to accelerate the Notes is stated in Section 6.02 of the Indenture as follows:

If an Event of Default occurs and is continuing, with respect to the Securities of any Series, the Trustee by notice to the Company, or the Holders of at least 25% in principal amount of all of the Securities of that Series Outstanding by notice to the Company and the Trustee, *may declare the principal and the premium and accrued interest, if any, on all the Securities of that Series to be due and payable immediately. Upon such a declaration, such principal and the premium and interest,* if any (or, if the Securities of that Series are Original Issue Discount Securities, such portion of the principal amount as may be speci-

fied in the terms of that Series), on the Securities of that Series *shall be due and payable immediately.* The Holders of a majority in principal amount of all of the Securities of that Series Outstanding, by notice to the Trustee, may rescind an acceleration and its consequences if the rescission would not conflict with any judgment or decree of a court of competent jurisdiction and if all existing Events of Default have been cured or waived except nonpayment of principal or premium or interest, if any, that has become due solely because of the acceleration.

(Emphasis added).

The Indenture Trustee, Chase, seeks modification of the automatic stay "for the limited purpose of allowing Chase to declare the principal and the accrued interest on the Notes to be due and payable immediately in order to preserve the rights of the holders of the Notes and ... not ... to enforce collection of said principal and for accrued interest ...". Affidavit of David K. Leverich, Vice President of Chase, sworn to May 13, 1987. (the "Chase affidavit"). The Trustee's reason for accelerating the Notes is stated in the Chase affidavit as follows:

13. The Trustee believes that the holders' interests would be furthered by a ruling permitting the delivery of such Notice of Acceleration to the Company and the Guarantor for the sole purpose of declaring all principal and accrued interest to be due and payable immediately. Granting of this relief is intended to be without prejudice to the rights of all parties in interest in the case.

New York Life Insurance Company ("N.Y. Life") supports Chase's application. N.Y. Life states that it owns $43,475,000 in principal amount of the Notes and that the earnings on the next Interest Period under the Indenture may decline from 13.25% to 7.75% as a result of the Officers' Certificate dated April 30, 1987 which Texaco Capital Inc. issued setting forth a 7.75% interest rate it would have established for the notes for the period June 1, 1987 through May 31, 1988, but for the commencement of the Chapter 11 case. N.Y.

Life asserts that the Note holders should have available the right to contend that acceleration occurred on or before May 31, 1987 by operation of law due to the Chapter 11 filing, or, alternatively, by virtue of the contractual notice. N.Y. Life, like Chase, does not seek a modification of the automatic stay to permit the Note holders to demand payment, or to preclude the debtors from making any argument as to the applicable interest rate when the interest issue is ultimately resolved. N.Y. Life contends that its purpose in seeking the limited relief from the stay is to ensure that the Note holders will have arguments available to them, especially since the stay was modified by stipulation in order to allow any Note holders who so wished to exercise their option to tender their Notes pursuant to the option expressed in the Indenture.

The proposed Notice of Acceleration which Chase seeks permission to deliver to the debtors reads as follows:

May ⸺, 1987

Texaco Capital Inc.
229 South State Street
Dover, Delaware 19901

Re: 13.25% Extendible Notes Due 1999 (the Notes:) Issued under Indenture Dated as of June 27, 1983 (the "Indenture") among Texaco Capital Inc. (the "Company"), Texaco Inc., Guarantor (the "Guarantor") and The Chase Manhattan Bank (National Association), as Trustee (the "Trustee")

Dear Sirs:

An Event of Default under Section 6.01(4)(A) of the Indenture has occurred and is continuing, the commencement of a voluntary case under chapter 11 of Title 11 of the U.S. Code by the Company and the Guarantor. As a result thereof, by this notice, we hereby declare the entire principal and accrued interest on the Notes to be due and payable immediately.

A copy of this notice is being delivered by first class mail to the Guarantor.

THE CHASE MANHATTAN BANK
(NATIONAL ASSOCIATION),
as Trustee

By: ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺

## DISCUSSION

After Texaco Inc. and its two subsidiaries, Texaco Capital Inc. and Texaco Capital N.V., filed their Chapter 11 petitions with this court and then later Texaco Capital Inc. announced a reduction in the interest rate from 13.25% to 7.75% with respect to the Notes under the June 27, 1983 Indenture for the period commencing June 1, 1987, this court approved a stipulation which permitted the Note holders to present a formal Notice of Tender to the debtors pursuant to the Indenture offering to tender their notes for repayment. The Notice of Tender was permitted by this court, notwithing the automatic stay imposed under 11 U.S.C. § 362(a), in order to allow the Note holders to maintain their *status quo* during the post-Chapter 11 period so that they might not be deprived of their rights to tender their Notes at some future time with the argument that they had not complied with the obligation of issuing a formal Notice of Tender to Texaco Capital Inc. The stipulated order dated May 8, 1987, did not permit an actual tender of the Notes or authorize their repayment.

Now the Indenture Trustee, Chase, and a major holder of Notes, N.Y. Life, wish to follow the same path in respect to the subject of acceleration. The movants contend that repayment of the Notes in full was accelerated either as a result of Sections 6.01(4)(A) and 6.02 of the indenture, which provide that the commencement of a bankruptcy case is an "Event of Default", or because the commencement of a bankruptcy case constitutes a default as a matter of law. Accordingly, the movants seek to be permitted to serve upon Texaco Capital Inc. a Notice of Acceleration, notwithstanding 11 U.S.C. § 362(a), in order to preserve their rights to claim later that an acceleration of the Notes occurred by the related debtors' commencement of their Chapter 11 cases. This would allow the Note holders to argue that they were locked into the higher 13.25% interest rate

before Texaco Capital Inc. announced a 7.75% interest rate on the Notes for the period commencing June 1, 1987. The movants do not seek to attempt to collect the amounts claimed as due under the Notes. As in the case of the Notice of Tender, the movants request permission to serve upon Texaco Inc. a formal Notice of Acceleration, which might be considered a condition precedent to later claiming that the Notes were accelerated upon the commencement of the Chapter 11 cases.

There is nothing in 11 U.S.C. § 362(a) which would prevent the movants from filing a proof of claim under 11 U.S.C. § 501 consistent with their position that the Indenture indebtedness and Notes were accelerated by the commencement of the debtors' Chapter 11 cases. *See In re Manville Forest Products Corp.*, 43 B.R. 293, 297–298 (Bankr.S.D.N.Y.1984), *aff'd in part and rev'd in part*, 60 B.R. 403 (S.D.N.Y.1986). However, the debtors would then be able to object to the proof of claim and argue that the indebtedness was not accelerated or that the interest rate was not 13.25%.

THE INDENTURE AND THE IPSO FACTO CLAUSE

Manifestly, the Indenture dated June 27, 1983 contemplates continued performances on the part of Texaco Capital Inc. and Chase, as the Indenture Trustee. Some of the continuing obligations of Texaco Capital Inc., other than payment of the notes include (a) Maintaining an office where the Notes may be presented for payment. (b) Maintaining a current list of names and addresses of security holders. (c) Effecting transfers and exchanges of securities. (d) Replacing lost, mutilated or destroyed securities. (e) Delivery of securities to the Trustee for cancellation. (f) Redeeming securities. (g) Depositing the redemption price. Similarly, the Indenture Trustee has continuing obligations under the Indenture such as (a) The commencement of litigation to enforce the Indenture. (b) filing proofs of claim. (c) Fixing record and payment dates. (d) Giving notices of default. (e) Submission of reports to Note holders. (f) Filing reports in compliance with 15 U.S.C.

§§ 77 aaa–77 bbb (the "Trust Indenture Act of 1939"). In light of the fact that performance remains due on both sides, the Indenture may be classified as an executory contract.

> Though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides.

H.R.Rep. No. 595, 95th Cong, 1st Sess. 347 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 58 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5844, 6303. This definition follows Professor Countryman's definition of executory contracts under the former Bankruptcy Act:

> [A] contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other.

Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439, 460 (1973); cited in *Benevides v. Alexander (In re Alexander)*, 670 F.2d 885, 887 (9th Cir.1982); *Fenix Cattle Company v. Silver (In re Select-A-Seat Corporation)*, 625 F.2d 290, 292 (9th Cir.1980); *Northwest Airlines, Inc., v. Klinger (In re Knutson)*, 563 F.2d 916, 917 (8th Cir.1977). *See In re Chipwich, Inc.*, 54 B.R. 427 (Bankr.S.D.N.Y.1985). *See also* Countryman, *Executory Contracts in Bankruptcy: Part II*, 58 Minn.L.Rev. 479 (1974).

The termination or modification of rights under executory contracts may not be effected solely because of a contractual provision that is conditioned on the commencement of a title 11 case. This restriction is expressed in 11 U.S.C. § 365(e)(1)(B) as follows:

> (e)(1) Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the com-

mencement of the case solely because of a provision in such contract or lease that is contioned on—

\* \* \*

(B) the commencement of a case under this title [11 U.S.C. § 101 *et seq.*]....

The event which caused the Noteholders to seek relief from the automatic stay in order to serve a Notice of Tender was the announcement by Texaco Capital Inc. of a reduction in the interest rate for the period commencing June 1, 1987. However, the event which prompted the Indenture Trustee and N.Y. Life to seek a modification of the stay in order to serve a Notice of Acceleration was the commencement of these Chapter 11 cases by Texaco Inc. and its two subsidiary corporations. A termination or modification clause in a contract which is triggered by the filing of a bankruptcy case is expressly denounced and is unenforceable pursuant to 11 U.S.C. § 365(e)(1)(B). *Bruder v. Peaches Records and Tapes, Inc.* (*In re Peaches Records and Tapes, Inc.*) 51 B.R. 583 (Bankr. 9th Cir.1985); *In re Rittenhouse Carpet, Inc.,* 56 B.R. 131, 13 B.C.D. 1168 (Bankr.E.D.Pa. 1985); *Chera v. 991 Boulevard Realty Corp.* (*In re National Shoes, Inc.*), 20 B.R. 55, 9 B.C.D. 11 (Bankr.S.D.N.Y.1982).

█ Accordingly, the movants may not accelerate the principal and accrued interest under the Indenture and the Notes to be due and payable immediately under Section 6.02 of the Indenture because they may not rely upon the debtors' commencement of their voluntary cases under the Bankruptcy Code as an "Event of Default", as expressed in Section 6.01(4)(A) of the Indenture. This *ipso facto* clause may not modify the rights and obligations of Texaco Capital Inc. under the Indenture.

## THE FINANCIAL ACCOMMODATION EXCEPTION

█ The movants also argue that the Indenture and Notes are financial accommodations for the benefit of the debtor and may be modified pursuant to 11 U.S.C. § 365(e)(2)(B), which creates an exception to 11 U.S.C. § 365(e)(1), and reads:

\* \* \* \* \* \*

(B) Such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or debtor.

The movants contend that the debtors will receive a windfall if the Indenture Trustee is unable to deliver a Notice of Acceleration because the Note holders will be forced to extend financing for yet another period while the interest rate will drop to 7.75%. This position elides the fact that the court has already permitted the Note holders to deliver to the debtors a Notice of Tender, if they so desire. If there had been no Chapter 11 filings the Note holders would have had the option of extending their Notes at the lower interest rate or tendering their shares. They still have that option although they may not violate the automatic stay and attempt to effect collection. The movants, however, wish to use the commencement of the reorganization cases as a justification for serving a Notice of Acceleration, which they apparently believe is necessary to lock them in at the higher rate during the course of these reorganization cases. Thus, it is not a matter of being compelled to extend future credit to the debtor, but rather, an effort by the movants to extend the higher interest rate beyond the May 31, 1987 deadline.

The exception pertains only to executory commitments to extend *future* credit....

(Emphasis added). *Peninsula International Corp. v. Citizens and Southern International Bank* (*In re Peninsula International Bank*), 19 B.R. 762, 764 (Bankr.S.D.Fla.1982). See S.R. No. 95–989, 95th Cong.2d Sess. 58–59 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 348 (1977).

Accordingly, 11 U.S.C. § 365(e)(2)(B) is not implicated and the *ipso facto* restriction applies.

## ACCELERATION UPON FILING

Apart from the *ipso facto* clause in the Indenture, the movants argue that the filing of a bankruptcy case automatically operates to accelerate the principal amount of all unmatured obligations. This point is taken out of context from the legislative

history with respect to 11 U.S.C. § 502(b), which deals with the allowance of claims or interests. Both the House Report and the Senate Report contain identical language as follows:

> Section 502(b) thus contains two principles of present law. First, interest stops accruing at the date of the filing of the petition, because any claim for unmatured interest is disallowed under this paragraph. Second, bankruptcy operates as an *acceleration* of the principal amount of all *claims* against the debtor....

(Emphasis added). Sen.Rep. No. 989, 95th Cong., 2nd Sess. 63 (1978); H.R.Rep. No. 595, 9th Cong. 1st Sess. 353 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5849, 6309. This language is consistent with the broad definition of the term "claim" as expressed in 11 U.S.C. § 101(4)(A) to mean "right to payment, whether or not such right is reduced to judgment, liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured...." In *Tonyan Construction Company, Inc. v. McHenry State Bank (In re Tonyan Construction Co., Inc.)* 28 B.R. 714, 727 (Bankr.N.D.Ill. 1983) the court permitted the right to a setoff of unmatured claims, and said:

> After the commencement of a case under title 11, an offset of claims absolutely owing by the debtor but not presently due is generally permitted, *provided the party seeking the setoff complies with the requirements of § 362 of the Bankruptcy Code.*

(Emphasis added) (footnote omitted). Similarly, in *Big Bear Super Market No. 3 v. Princess Baking Corporation (In re Princess Baking Corp.)*, 5 B.R. 587 (Bankr.S.D. Cal.1980), the court ruled that the entire amount of the principal balance of a promissory note issued by the debtor was available for setoff even though only one monthly installment was due on the day the petition was filed.

This is because bankruptcy proceedings operate to accelerate the principal amounts of all claims against the debtor, with the result that setoff may be asserted even though one of the debts involved is absolutely owing, but not then presently due.

5 B.R. at 590.

Unsecured creditors are not placed at a disadvantage as a result of a setoff because when mutual debts and mutual obligations are applied against one another there is no violation of the concept of equality of distribution. The estate's other unsecured claimants are not adversely affected because a creditor who is entitled to a setoff is regarded in the same light as a secured claimant. Thus, in the determination of secured status, a creditor secured by a lien on property on which the estate has an interest, is treated no differently in 11 U.S.C. § 506(a) than a creditor who holds a claim that is subject to setoff under 11 U.S.C. § 553.

The doctrine that the filing of a petition under the Bankruptcy Code accelerates claims has also been applied to secured claims. In *Matter of LHD Realty Corporation*, 726 F.2d 327 (7th Cir.1984), a mortgagee with four monthly payments overdue, was treated as having exercised its option to accelerate the mortgage when it requested relief from the automatic stay for the purpose of foreclosing on the mortgage. The court then held that the mortgagee, by seeking relief from the automatic stay, established that it preferred accelerated payment to the opportunity to earn interest over a period of years. Therefore, the mortgagee was deemed to have waived the unpaid interest in the expectation of accelerated payment of the remaining principal. The court noted that acceleration of the secured claim was a conditional right of the secured lender in a Chapter 11 case, subject to being undone by the cure provisions of 11 U.S.C. §§ 1123(a)(5), (6) and 1124. The court found support for this position in 11 U.S.C. § 1124, which recognizes the authority to deaccelerate a mortgage, and said that:

> the implication is that a lender can accelerate a loan notwithstanding Section 362, subject to its action being reversed pursuant to Section 1124.

726 F.2d at 332.

In the instant case the movants do not represent secured claims nor do they assert

a right to setoff; they represent the holders of unsecured claims. To permit an unsecured claimant to serve a Notice of Acceleration upon a debtor simply because of the commencement of these Chapter 11 cases, as distinguished from the right to file a proof of claim pursuant to 11 U.S.C. § 501 for the unmatured indebtedness, would mean that the commencement of a case under title 11 is sufficient cause to allow unsecured claimants to go beyond the filing of proofs of claim and take affirmative steps which they deem necessary towards the collection of their claims. The legislative history of 11 U.S.C. § 362 discloses a congressional intent to stay all proceedings against a debtor and to preserve the *status quo* of the estate during the pendency of the case:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. *It stops all collection efforts*, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

(Emphasis added). Sen.Rep. No. 989, 95th Cong. 2nd Sess. 54, 55 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5840, 5841, 6296, 6297.

Chase cites *In the Matter of Chicago, Milwaukee, St. Paul and Pacific Railway Co.*, 791 F.2d 524 (7th Cir.1986) in support of accelerated payment, notwithstanding the commencement of a reorganization case. However, this was a pre-Code case, where the broad definition of "claim", as stated in 11 U.S.C. § 101(4) did not apply. The court treated the filing of a petition under Section 77 of the former Bankruptcy Act, as an acceleration of the indebtedness for the purpose of determining the appropriate interest rate. No collection effort, such as the delivery of a Notice of Acceleration, was intended. Similarly, *Morgan Guaranty Trust Company of New York v. American Savings and Loan Association*, 804 F.2d 1487 (9th Cir.1986), which is relied upon by Chase, is also inap-

posite. The court held that a holder-in-due-course could present notes for payment on their due dates, notwithstanding that they were mistakenly paid after the holder had knowledge that the maker, Manville Corporation, had filed a Chapter 11 petition. The automatic stay did not bar presentment for payment because such act did not interfere with the orderly administration of the estate or the *status quo*. The court's decision was buttressed by the fact that 11 U.S.C. § 362(b)(11) now expressly excepts from the automatic stay the presentment of a negotiable instrument and the giving of notice of and protesting dishonor of such an instrument. The presentment of a negotiable note for payment which is *due by its own terms*, and the giving of a notice of protest differ from the instant case, where the movants claim that the Notes were accelerated as a result of the commencement of the Chapter 11 cases. The filing of a Notice of Acceleration would be a collection effort triggered by the commencement of the Chapter 11 cases and proscribed by the automatic stay. The commencement of a case under title 11, without more, cannot be regarded by unsecured creditors as sufficient cause for relief from the automatic stay imposed under 11 U.S.C. § 362(a).

## CAUSE

Having determined that the debtors' commencement of their Chapter 11 cases is not sufficient cause alone to support the movants' request for leave to deliver a Notice of Acceleration in the face of the automatic stay, there next remains for consideration whether there are other factors which would constitute cause for a modification of the stay pursuant to 11 U.S.C. § 362(d).

The movants argue that the giving of a Notice of Acceleration does not constitute an act to collect, assess, or recover a claim against the debtors. They contend that it is a ministerial act intended only to preserve the *status quo* and to prevent the Note holders' rights from lapsing. Additionally, the movants maintain that the automatic stay should be used only as a

shield and not as a sword. On the other hand, the debtors argue that the movants seek to enhance their position rather than to maintain the *status quo* as of the commencement of these Chapter 11 cases. The debtors contend that the giving of a Notice of Acceleration will conclusively effect an acceleration.

As of the commencement of these Chapter 11 cases on April 12, 1987, the Note holders were entitled to an interest rate of 13.25%. Hence, immediately after the commencement of these cases, the movants and the other Note holders could file proofs of claim for the full amount due under the Notes, together with interest at the contract rate. The debtors could then object to the claims and question whether the contract rate .of interest or the prevailing market rate should apply to the post-petition indebtedness. However, a post-petition event occurred which disrupted this situation. Texaco Capital Inc. unilaterally lowered the contract rate of interest for the period commencing June 1, 1987, as authorized under the terms of the Indenture. This fact altered the *status quo* because dissatisfied Note holders could not turn in their Notes for payment in accordance with the terms of the Indenture. In order to preserve the rights of the dissatisfied Note holders and in an effort to maintain the *status quo*, the court approved a stipulation on May 8, 1987, which permitted the Indenture Trustee and the Note holders to serve a Notice of Tender. However, as in the case of all other unsecured claimants, the Note holders lost their option to receive payment in full because of the commencement of these Chapter 11 cases.

If the Note holders only sought to preserve their right to claim the 13.25% interest rate and not be faulted for not having filed a Notice of Acceleration, there would be no problem. The court could treat their Notice of Tender, together with their filing of proofs of claim for the full amount at the 13.25% interest rate, as satisfying the condition precedent for such claim. The debtors should not be permitted to use the automatic stay and argue that a formal Notice of Acceleration is a condition prece-

dent to the Note holders' right to claim the higher interest rate. However, the Note holders seek more than a preservation of their rights. Although there is presently no default in payment under the Indenture, the Note holders propose to use the debtors' commencement of these Chapter 11 cases as a reason for effecting an acceleration of the indebtedness, not by operation of law, but by contractual conduct authorized under the Indenture because of the commencement of the Chapter 11 cases. Such conduct would automatically lock the Note holders into a 13.25% interest rate and would foreclose the debtors from subsequently contending that the reduced rate of 7.75% applied after May 31, 1987. The giving of a Notice of Acceleration under the Indenture as a result of the commencement of the Chapter 11 cases would further muddy the waters should the debtors later seek to deaccelerate the indebtedness in accordance with 11 U.S.C. § 1124 and cure any defaults.

■ Nothing in the legislative history implies that the automatic stay should be invoked in a manner which would advance the interests of some *unsecured* claimants over others. To modify the automatic stay so as to allow the movants to serve a Notice of Acceleration would give such notice the imprimatur of the court simply because of the commencement of these Chapter 11 cases. Congress specifically rejected *ipso facto* clauses geared to the commencement of title 11 cases not only with respect to executory contracts, but also with respect to the concept of what constitutes property of the estate, as expressed in 11 U.S.C. § 541(c)(1)(B), and with respect to a debtor's right to use, sell, or lease property as reflected in 11 U.S.C. § 363(b)(1). Therefore, if the *ipso facto* clause in the Indenture were ignored, the movants would be relegated to the same rights as all of the other unsecured claimants; they would simply file proofs of claim for the full amount of their indebtedness, together with interest at the 13.25% rate which they claim applied as of the commencement of these cases. Their preclusion from filing a formal Notice of Ac-

celeration should not be used to prevent the Note holders from claiming the higher interest rate, subject to a later determination by the court.

In light of the foregoing, the court finds that the movants have not established cause for a modification of the automatic stay so as to be allowed to deliver to the debtors the proposed Notice of Acceleration.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

2. The commencement of these Chapter 11 cases by the debtors did not constitute an "Event of Default" as defined in Section 6.01(4)(A) of the Indenture because the effectiveness of the provision was precluded by the *ipso facto* prohibition in 11 U.S.C. § 365(e)(1)(B).

3. The commencement of these cases under title 11, without more, cannot be regarded by unsecured creditors as sufficient cause for relief from the automatic stay imposed under 11 U.S.C. § 362.

4. The movants have not established cause for relief from the automatic stay. The motion is, therefore, denied.