In re ZENITH LABORATORIES, INC., Zenith Parenterals, Inc., Zenith Laboratories Caribe, Inc., RMWB Associates, Inc., Debtors.

ZENITH LABORATORIES, et al., Plaintiffs,

v.

SECURITY PACIFIC NATIONAL TRUST COMPANY (NEW YORK), Defendant.

Nos. 88–03602, 88–03603, 88–03648 and 88–04263.

Adv. No. 89–0001.

United States Bankruptcy Court, D. New Jersey.

Aug. 25, 1989.

As Corrected Oct. 13, 1989.

Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime by Ira M. Levee, Roseland, N.J., for plaintiff.

Pitney, Hardin, Kipp & Szuch by Roger C. Ward, Steven J. Halpern, Morristown, N.J., for defendant.

Scarpone & Edelson by Val Mandel, Newark, N.J., for unsecured creditors' committee.

## OPINION

WILLIAM F. TUOHEY, Bankruptcy Judge.

The within matter comes before the court by way of defendant's motion seek-

ing an order dismissing the adversary complaint filed by debtor, Zenith Laboratories, against Security Pacific National Trust Company (New York) ("Security Pacific"). Inasmuch as the underlying complaint filed by the plaintiff, Zenith, seeks a determination that Security Pacific violated the automatic stay of Bankruptcy Code Section 362 and seeks damages for said violation or in the alternative a restoring of the debtor to the status quo prior to Security Pacific's action; and inasmuch as said action is grounded in Bankruptcy Code Sections 362, 365 and 541, the within proceeding is a core proceeding under this court's primary jurisdiction as defined in 28 United States Code 157.

Prior to filing its answer the defendant moved to dismiss pursuant to F.R.C.P. 12(b)(1) and (6) asserting that the matter should be dismissed for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction. Federal Rule 12(b) is incorporated into bankruptcy adversary proceedings pursuant to Bankruptcy Rule 7012(b). Inasmuch as at oral argument on April 10, 1989, the parties by consent placed into evidence all the bank documents, this matter, pursuant to F.R.C.P. 12(b), will be treated as a motion for summary judgment.

Based on the verified complaint and the motion papers filed by the respective parties as well as the briefs submitted to the court and the loan documents in evidence, the court finds the following.

## FINDINGS OF FACT

1. The adversary complaint before this court has been filed by certain debtors, namely Zenith Laboratories, Inc., Zenith Parenterals, Inc., and Zenith Laboratories Caribe, Inc. In addition, two corporate affiliates of the debtors, known as Zenith Progynon Corp. and Praelex Corp., have joined in the adversary proceeding though they are not debtors in chapter 11 matters before this court. Inasmuch as the parent company is Zenith Laboratories, Inc., all plaintiffs will be referred to herein as "Zenith."

2. The defendant in this matter is Security Pacific National Trust Company (New York), a national banking association having its headquarters in New York City, New York, hereafter referred to as "Security Pacific."

3. The debtor, Zenith, had entered into an agreement with The New Jersey Economic Development Authority concerning the financing of a project consisting of the acquisition of 7.2 acres of land and a 37,000 sq. ft. building and the renovation and expansion of said structure, as well as the acquisition of certain machinery and equipment, all to be located in Ramsey, New Jersey. (Ex. D–1, document #8, p. 11.)

4. On December 1, 1986, Zenith borrowed the sum of $8,867,587 pursuant to the issuance of certain industrial revenue bonds issued by the New Jersey Economic Development Authority ("EDA"). The said bonds were to mature on December 6, 2001. (Complaint, ¶ 10.)

5. On the date the bonds were issued Zenith executed a promissory note to the EDA in the aforesaid sum. Said note further provides that Zenith would reimburse the EDA for the principal, premium if any, and interest that the EDA might pay to holders of the aforesaid development bonds. (Complaint, ¶ 11.)

6. A financing agreement dated as of November 1, 1986, between Zenith and the EDA obligates Zenith to pay interest quarterly upon the bonds at 5–1/4% up to April 14, 1987, and a floating interest note thereafter until the bonds mature.

7. On November 1, 1986, as a result of a trust indenture entered into between the New Jersey EDA and Security Pacific, the defendant herein, Security Pacific became trustee for the aforesaid bond holders. New Jersey EDA assigned all of its rights and interest in the promissory note, subject to certain specified exclusions in the financing agreement, to Security Pacific. (Complaint, ¶ 13.)

8. On December 1, 1986, an irrevocable letter of credit up to $9,474,955.97 was issued by Marine Midland Bank ("Marine Midland") to secure payment by Zenith. The letter of credit authorized Security Pa-

cific to draw on Marine Midland "as necessary" to pay the bond holders the principal and interest then due on the bonds. (Complaint, ¶ 14.)

9. As noted above, pursuant to the terms of the financing agreement, interest on the bonds after April 15, 1987, was at a floating rate. From April 15, 1987, through May 4, 1988, the floating interest rate varied from 4.35% to 7%.

10. Plaintiffs, jointly and severally, were obligated to reimburse Marine Midland for any payments it made upon the letter of credit, together with interest at prime plus 1–½% or 2% (currently in the range of 10–½% to 12% total). Said rate which governs the letter of credit is set forth in a reimbursement agreement dated November 1, 1986. (Complaint, ¶¶ 15, 23.)

11. On May 4, 1988, plaintiff, Zenith, filed a petition for reorganization pursuant to chapter 11 of the United States Bankruptcy Code. It is agreed by the parties that at the time of the filing of the chapter 11 proceeding, Zenith was current on its obligations under the financing agreement and no event of default had occurred up to that point with respect to the financing agreement, the trust indenture or the bonds. (Complaint, ¶ 19.).

12. On May 5, 1988, the day after Zenith commenced the chapter 11 proceeding, defendant, Security Pacific, presented a sight draft in the amount of $7,418,740.57 to Marine Midland, representing the full balance owed on the bonds. Said amount was used to pay the bondholders in full.

13. Security Pacific did not furnish Zenith with copies of its certificate to Marine Midland and its sight draft, although the letter of credit entitled Zenith to such copies. (Complaint, ¶ 21.)

14. On May 6, 1988, Security Pacific advised Zenith, by letter, that its filing for relief under the bankruptcy statutes was an event of default under the trust indenture, and that therefore the obligation of Zenith to pay principal and interest upon the bonds had been automatically accelerated. (Complaint, ¶ 22.) [1]

15. It is undisputed that the bonds were issued and paid for on December 1, 1986, according to the terms of the transaction, and the proceeds were made available for Zenith's use. Security Pacific, as trustee, took the net proceeds of the sale of the bonds into a fund known as the "construction fund" and held them subject to its authority and duty to disburse them against the costs of the development intended to be financed by the loan transaction.

16. The bonds themselves were non-recourse obligations of the EDA. Zenith's obligations to the EDA on its promissory note for "loan repayments" and the obligations inherent in the bonds themselves were secured by Zenith's mortgage of real and personal property dated December 1, 1986, and an assignment of leases likewise dated December 1, 1986. (Mortgage is loan document #10 in exhibit D–1; assignment of leases, loan document #11 in exhibit D–1.)

17. The basis of Zenith's damage claim is that as a result of Security Pacific presenting the aforesaid sight draft to Marine Midland, the debtor, Zenith, is now required to repay Marine Midland at prime plus 1–½% to 2%. Said interest has varied from 10–½% to 12%, and Zenith, it is asserted by the plaintiff, must now pay at over twice the rate of interest as required under the original financing agreement.

18. At the oral argument on April 10, 1989, the court asked Zenith to provide it with a statement as to additional interest incurred by Zenith as a result of Security Pacific drawing upon the aforesaid letter of credit. By letter dated April 18, 1989, filed with the court April 22, 1989, Zenith has stated, "As a result of the actions of Security Pacific in drawing upon the letter of credit, Zenith incurred additional interest expense of $383,994.05." The court is not satisfied with the documentary evidence submitted as to the full scope of the dam-

---

1. The parties, on April 10, 1989, marked as exhibit D–1 in evidence the entire bound New Jersey Economic Development Authority pack-age of loan documents. Said exhibit consists of 32 documents.

ages suffered; however, for purposes of the within motion it is uncontested that as a result of Security Pacific's drawing down on the letter of credit at issue, Zenith has incurred additional interest expenses.

### CONCLUSIONS OF LAW

The facts as outlined above are basically not in dispute. What is presented as the primary issue to the court is whether the complaint as filed sets forth a claim upon which relief can be granted. Zenith's complaint stands on four specific counts. Count I asserts that the financing agreement is an executory contract subject to the provisions of Bankruptcy Code Section 365. It is specifically asserted that that portion of the financing agreement providing that Zenith's filing of a bankruptcy would constitute an event of default would have no effect because of the bar of Bankruptcy Code Section 365(e). It is the conclusion of Count I that, accordingly, no event of default occurred and no automatic acceleration can take place. Zenith requests in Count I that this court find that Security Pacific's actions in representing to Marine Midland that Zenith was in default were acts of collection to recover a claim against the debtor and were in violation of the stay provisions of Bankruptcy Code Section 362(a)(6).

Count II of the complaint states that Zenith's rights under the financing agreement with Security Pacific to pay interest at the rate determined therein are property rights of the debtors' estate as defined by Bankruptcy Code Section 541. Count II asserts that Security Pacific's actions in drawing down on the letter of credit were in violation of Bankruptcy Code Section 541(c)(1).

Count III of the complaint states that notice to the debtor, Zenith, of its default, the notice of the acceleration based on said default, and the drawing down on the letter of credit issued by Marine Midland, were all acts in violation of Bankruptcy Code Section 365(e).

Count IV states that under the common law of the State of New Jersey, and particularly New Jersey Statutes Annotated 12A:1-203, Security Pacific owed Zenith a duty of good faith and fair dealing in its performance under and pursuant to the terms of the financing agreement between the parties. Count IV concludes that Security breached its contractual duties to deal in good faith with Zenith when it took the aforesaid action of accelerating the loan and drawing down upon the letter of credit.

The letter of credit at issue before the court is set forth in exhibit D-1 in evidence as document #15. It is an irrevocable letter of credit issued on December 1, 1986 by Marine Midland Bank. On its face the letter of credit is addressed to Security Pacific and commits Marine Midland to pay to Security upon presentation of a sight draft an aggregate amount not to exceed $9,474,955.97 as reduced and as set forth in the terms of the letter of agreement, upon demand. The general terminology used in connection with a letter of credit refers to a customer (the entity seeking the letter of credit), the issuer (the financial institution issuing the letter of credit) and the beneficiary (the entity to whom the financial institution commits itself to payment). The underlying cornerstone or fundamental legal principle of letter of credit law is the concept of the "independence principle." Under the independence principle an issue of obligation to the letter of credit's beneficiary is independent from any obligation between the beneficiary and the issuer's customer. Pursuant to the facts before this court, the customer is Zenith; the issuer of the letter of credit is Marine Midland, and the beneficiary of the letter of credit is Security Pacific.

The basic financial relationships which underpin a letter of credit are discussed at some length in the case of *Matter of Compton Corp.*, 831 F.2d 586 (5th Cir. 1987), *rehearing and remand*, 835 F.2d 584 (5th Cir.1988). The initial opinion in *Compton, supra*, at 831 F.2d, 590, by Circuit Judge Williams had occasion to note:

All a beneficiary has to do to receive payment under a letter of credit is to show that it has performed all the duties required by the letter of credit. Any

disputes between the beneficiary and the customer do not affect the issuer's obligation to the beneficiary to pay under the letter of credit.

The commercial importance of bank-issued letters of credit in the world of finance is enormous. Their unique value has been recognized in case law and in scholarly journals. *See* Chaitman, Helen Davis and Sovern, Jeff: "Enjoining Payment on a Letter of Credit in Bankruptcy: A Tempest in a Twistcap," 38 *Business Lawyer*, 24–25 (November, 1982).

The widespread use of bank-issued letters of credit is confirmed by the fact that in 1986 the face total of said bank-issued letters of credit had reached the sum of 170 billion dollars.[2] While the Fifth Circuit in *Compton, supra,* found that the letter of credit before it constituted a preferential payment to the beneficiary of the letter of credit,[3] the court went to great lengths to outline the history of letters of credit and to uphold their basic integrity in the commercial market place.

The general law as to the nature of the letter of credit and the impact of a bankruptcy filing on a letter of credit is amply set forth by the Fifth Circuit in the *Compton* case at 831 F.2d, commencing page 589:

It is well established that a letter of credit and the proceeds therefrom are not property of the debtor's estate under 11 U.S.C. § 541. *In re W.L. Mead, Inc.,* 42 B.R. 57 (Bankr.N.D.Ohio, W.D.1984); *In re Lesiure Dynamics, Inc.,* 33 B.R. 171 (Bankr.Minn.1983); *In re North Shore & Central Illinois Freight Co.,* 30 B.R. 377 (Bankr.N.D.Ill., E.D.1983); *In re M.J. Sales & Distribution Co.,* 25 B.R. 608 (Bankr.S.D.N.Y.1982). When the issuer honors a proper draft under a letter of credit, it does so from its own assets and not from the assets of its customer who caused the letter of credit to be issued. *In re W.L. Mead; In re M.J. Sales.* As a result, a bankruptcy trustee is not entitled to enjoin a post petition payment of funds under a letter of credit from the issuer to the beneficiary, because such a payment is not a transfer of debtor's property (a threshold requirement under 11 U.S.C. § 547(b)). A case apparently holding otherwise, *In re Twist Cap., Inc.,* 1 B.R. 284 (Bankr. Fla.1979) has been roundly criticized and otherwise ignored by courts and commentators alike.

■ For the aforesaid reasons, Count II, which basically asserts that the letter of credit was a property right as defined under Bankruptcy Code Section 541, fails. The letter of credit and the proceeds therefrom are not property of the debtors' estate. *Matter of Compton Corp.,* 831 F.2d 586 (5th Cir.1987); *In re W.L. Mead, Inc.,* 42 B.R. 57 (Bankr.N.D.Ohio 1984).

Counts I and Counts III of the complaint depend for their underpinnings upon the legal proposition that Bankruptcy Code Section 365 dealing with executory contracts applies to the loan contract between Security Pacific and Zenith.

Professor Vernon Countryman discussed the meaning of executory contracts within the bankruptcy context as follows:

A contract under which the obligations of both the bankrupt and the other party to the contract are left so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.

---

**2.** Statement by Manuel H. Johnson, Vice–Chairman of the Board of Governors of the Federal Reserve System before the Committee on Banking, Housing and Urban Affairs of the U.S. Senate, May 21, 1987, 73 Federal Reserve Bulletin 577.

**3.** The preference under Bankruptcy Code 547 was grounded on the finding by the court in *Compton* that the letter of credit did not serve its usual function of backing up a contemporaneous credit decision, but instead served as a backup payment guarantee on an extension of credit already in jeopardy. *Compton, supra,* at 590. It is specifically noted that in *Compton,* the letter of credit was obtained by the debtor for the benefit of its supplier after the debtor had already defaulted under the payment terms of the original delivery of merchandise. None of said facts are before this court in the matter *sub judice.*

672

"Executory Contracts in Bankruptcy," 57 Min.Law Review, 439, 460 (1973).

■ Therefore, to constitute an executory contract, there must be some further performance to be rendered by each party so that such remaining obligations are bilateral in nature. *Matter of Smith–Jones, Inc.*, 26 B.R. 289 (Bankr.D.Minn.1982).

The term "executory contract" is not defined in the Bankruptcy Code; however, the legislative history for section 365 reads in part:

> Though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides. A note is not usually an executory contract if the only performance that remains is repayment. Performance on one side of the contract would have been completed and the contract is no longer executory.

H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 347 (1977), U.S.Code Cong. & Ad.News, 1978, pp. 5787, 6303–6304.

The case law is consistent in holding that a loan transaction is not an executory contract if the only performance that remains is the debtor's present or future duty to repay the loan. *In re Texstone Venture Ltd.*, 54 B.R. 54 (Bankr.S.D.Tx.1985); *In re Whatley*, 16 B.R. 394 (Bankr.W.D.Ohio 1982).

Plaintiff strenuously argues that Bankruptcy Code Section 365(e) which deals with acceleration clauses in executory contracts, bars the action of Security Pacific in declaring the entire bond balance due and looking to the letter of credit of Marine Midland for reimbursement. In connection with the *ipso facto* argument, debtor also relies upon Bankruptcy Code Section 541(c). As previously noted, the court has ruled that the letter of credit at issue is not property of the estate, and thus an argument grounded in § 541 of the Bankruptcy Code fails. Also, as previously indicated, the court has determined that actions springing from the letter of credit are not executory contracts, and thus the *ipso facto* language of Code Section 365 also do not apply to the facts at issue before this court.

The debtor, in its complaint as well as in its brief, argues that the *ipso facto* clause which is contained in the financing agreement violates the provisions of the Bankruptcy Code. It is important to recognize that the financing agreement relied upon is between the New Jersey Economic Development Authority and Zenith Laboratories. In strictest terms, the debt, which automatically accelerated and which was paid off by Marine Midland pursuant to the letter of credit, was the obligation embodied in the bonds. Zenith's various obligations under the financing agreement and the promissory note were received and held by Security Pacific as security for the bond obligations. Security Pacific's drafting upon the letter of credit issued by Marine Midland was not an action to collect upon Zenith's promissory note or financing agreement. Not only was the trust indenture, under which Security Pacific acted, not an executory contract, but it was not Zenith's contract at all, and for this reason alone was beyond the reach of § 365(e)(1). *In re Apex Oil Company*, 91 B.R. 865 (Bankr.E.D.Missouri, 1988).

Debtor further relies upon *In re Texaco*, 73 B.R. 960 (Bankr.S.D.N.Y.1987). In *Texaco*, Judge Howard Schwartzberg noted on page 964 of the opinion that the mortgage indenture contemplated continued performance on the part of Texaco Capital, Inc. and Chase, as the indentured trustee. The opinion sets forth in detail that performance would continue into the future. In the current matter before this court, no significant, future, affirmative performance was left to be performed by Security Pacific for the benefit of Zenith.

The final point pressed by Zenith is that Security Pacific failed to satisfy its obligation to exercise good faith in the performance and enforcement of the financing agreement. The plaintiff relies upon N.J.S.A. 12A:1–203 to impose said burden on Security Pacific.

"Good faith" is defined in the New Jersey Statutes as "honesty in fact in the conduct or transaction concerned." N.J.S.A. 12A:1–201(19). The record before this court is devoid of any evidence to show a

leading on by Security Pacific of Zenith or of any bad faith by Security Pacific in its dealings with Zenith. *Shallcross v. Community State Bank & Trust Co.,* 180 N.J. Super. 273, 434 *A.*2d 671 (L.Div.1981); *Lustrelon, Inc. vs. Prutscher,* 178 N.J.Super. 128, 428 A.2d 518 (App.Div.1981).

■ It is conceded by Security Pacific that on May 5, 1988, when it collected on the letter of credit, it failed to furnish Zenith with a copy of its sight-draft. Nevertheless, on May 6, 1988 Security Pacific advised Zenith by letter that the filing on May 4, 1988 was an event of default under the trust indenture, and that therefore the obligation for principal and interest upon the bonds and Zenith's repayment obligations had automatically accelerated. The court finds that said conduct by Security Pacific does not rise to the level of bad faith so as to be a valid cause of action possessed by Zenith against Security Pacific grounded on N.J.S.A. 12A:1–203.

■ In summary, letters of credit and the proceeds therefrom are not property of the debtor's bankruptcy estate. When the issuer of the letter of credit honors a proper draft upon a letter of credit, it does so from the issuer's own assets and not from the assets of its customer who caused the letter of credit to be issued. As a result a bankruptcy trustee or a debtor in possession is not entitled to enjoin a postpetition payment of funds under a letter of credit from the issuer to the beneficiary, because such a payment is not a transfer of the debtor's property. *Matter of Compton Corp.,* 831 F.2d 586 (5th Cir.1987), *rehearing and remand,* 835 F.2d 584 (5th Cir. 1988).

For the aforesaid reasons, defendant's motion to dismiss all counts of the complaint be and the same hereby is granted without costs.