In re PRIME MOTOR INNS,
INC., et al. Debtors.

FIRST FIDELITY BANK, N.A., New Jersey, as Indenture Trustee, and Manufacturers Hanover Trust Company, Appellants,

v.

PRIME MOTOR INNS, INC., and Prime Management Co., Inc., Appellees.

Bankruptcy Nos. 90–504–BKC–AJC, 91–37–CIV–KLR.

United States District Court,
S.D. Florida.

July 30, 1991.

Robert A. Soriano of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, Fla., Melvyn L. Cantor, Mark Thompson, Jay S. Handlin, I. Scott Gottdiener of Simpson Thacher & Bartlett, New York City, for Mfrs. Hanover Trust.

David M. Levine of McDermott, Will & Emery, Miami, Fla., Dennis J. O'Grady, Renee M. Bumb, J. Alex Kress of Riker, Danzig, Scherer, Hyland & Perretti, Morristown, N.J., for appellant First Fidelity Bank.

Richard L. Klein, Marc Abrams, Robert M. Saunders, Diana B. Simon, of Willkie Farr & Gallagher, New York City, Stephen D. Busey, Cynthia C. Jackson of Smith & Hulsey, Jacksonville, Fla., for appellees Prime Motor Inns, Inc., and Prime Management Co., Inc.

Bruce E. Clark, T. Truxtun Hare of Sullivan & Cromwell, New York City, David Carter, Kevin C. Gleason of Carter Kinery & Gleason, P.A., Boca Raton, Fla., amicus curiae brief submitted by: the New York Clearing House Ass'n.

## OPINION AND ORDER

RYSKAMP, District Judge.

This matter having been brought before the Court for hearing on the 19th day of July, 1991 upon the consolidated appeals of First Fidelity Bank, N.A. as Indenture Trustee and Manufacturers Hanover Trust Company, and upon consideration of the record and of the briefs and oral arguments of the Appellants, the Debtors/Appellees and The New York Clearing House Association, *amicus curiae*, the Court, for the reasons hereinafter set forth, reverses the orders of the Bankruptcy Court that are the subject of these appeals.

*Appellate Jurisdiction*

1. This court has jurisdiction of this appeal from final orders of the Bankruptcy Court, styled as preliminary injunctions, enjoining First Fidelity from distributing proceeds of draws under six letters of credit, and subsequently requiring First Fidelity to return those proceeds to the banks that issued and paid under the letters of credit, and ordering those banks to reinstate the letters of credit. It is the Court's view that these were final orders appealable under 28 U.S.C. § 158(a), but even if these appeals were to be considered interlocutory, this court considers the notices of appeal filed herein to be motions for leave to appeal under Bankruptcy Rule 8003(c) and grants those motions in the exercise of the Court's discretion in view of the significant issues raised.

*Facts*

2. The facts material to these appeals are not contested. From 1982 to 1984, the New Jersey Economic Development Authority and the Ulster County (New York) Industrial Development Authority sold six different issues of tax-exempt bonds in a total amount of approximately $18 million. The Authorities executed six trust indentures with First Fidelity (or a predecessor bank before a merger) in connection with these bond issues. The Authorities loaned the proceeds of the bonds to Prime Motor Inns, Inc. and its affiliate, Prime Management Co., Inc. (together, "Prime" or "the Debtors"). The notes executed by Prime in favor of the Authorities were assigned to First Fidelity as Indenture Trustee. These notes were secured by mortgages and assignments of leases granted by Prime to the Authorities.

3. In connection with each of the six financings, First National State Bank, predecessor in interest to First Fidelity, or

Manufacturers Hanover Trust issued a letter of credit for the account of Prime and in favor of First Fidelity as Indenture Trustee for the bondholders. The letters of credit were intended to permit the Indenture Trustee to draw and pay to the bondholders the amounts of principal and interest owed to the bondholders at the time of a default. Upon a draw under a letter of credit, the amount paid by the issuing bank would constitute its loan to Prime, with interest at the issuing bank's prime rate plus 2%, a rate higher than the interest rate on the tax-exempt bonds. Prime's mortgages and assignments of leases also were pledged as security for Prime's reimbursement obligations to the issuers of the letters of credit.

4. On September 18, 1990, the Debtors commenced voluntary Chapter 11 cases, an act that constituted an event of default under each indenture between the Authorities and First Fidelity as Indenture Trustee. The Indenture Trustee thereupon served notice on Prime that five of the bond issues had been accelerated. The sixth issue accelerated automatically. The Indenture Trustee then presented sight drafts and certificates to the letter of credit issuers demanding amounts sufficient to pay out the bondholders. The issuing banks paid the Indenture Trustee under the letters of credit. On October 1, 1990, however, immediately before the Indenture Trustee could distribute the letter of credit proceeds to the bondholders, the Bankruptcy Court upon the Debtors' application entered a temporary restraining order that prohibited payment by the Indenture Trustee to the bondholders, and subsequently entered a "Memorandum Opinion and Order Granting Preliminary Injunction dated October 18, 1990" to that same effect. *See In re Prime Motor Inns, Inc.*, 123 B.R. 104 (Bankr.S.D.Fla.1990). The Bankruptcy Court subsequently entered an "Order Supplementing Memorandum Opinion and Order Dated October 18, 1990," dated October 30, 1990, directing that the letter of credit proceeds be returned to the issuing banks and that those banks reinstate the letters of credit. These appeals from the two orders followed. Consistent with the Bankruptcy Court's second order, the debtors have made interest payments as required under their notes to the Authorities, but the letter of credit proceeds have not been distributed to the bondholders and the bondholders have not been paid the principal of the bonds still outstanding.

5. The Debtors assert that, in issuing the orders below, the Bankruptcy Court properly exercised jurisdiction conferred on the District Court under 28 U.S.C. §§ 1334 and 157(a). The Debtors further assert that the matter was a "core proceeding" under § 157(b)(2)(A) ("matters concerning the administration of the estate"), (G) ("motions to terminate, and or modify the automatic stay"), and (O) (other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship), and that the actions of the Indenture Trustee in sending notices of acceleration and drawing on the letters of credit violated the automatic stay, 11 U.S.C. § 362(a), and the anti-*ipso facto* clause, 11 U.S.C. § 365(e), and affected the Debtors' interest in property, 11 U.S.C. § 541, and their ability to reinstate the tax-exempt bonds in connection with any eventual plan of reorganization, 11 U.S.C. § 1124.

6. The appellants and the Clearing House contend that none of these provisions of law gives the Bankruptcy Court subject matter jurisdiction to intervene with regard to the operation and payment of letters of credit to which the Debtors are not parties. Neither the letters of credit nor their proceeds, they argue, are property of the Debtors or their estates, and the Bankruptcy Court thus has no power to affect the operation of those contracts between two non-debtors. Further, they argue, there was no violation of the automatic stay because no action was taken to obtain property of Prime or to enforce a claim against Prime; the anti-*ipso facto* clause was not implicated because each indenture was a contract between the Indenture Trustee and the Authorities, not Prime, and in any event no material obligations were owed to the Debtors thereunder; the drawings on the letters of credit

did not disturb Prime's interest under § 541 in the property pledged as collateral at the origin of these transactions; and § 1124 is a definitional provision applicable only to plans of reorganization that does not confer on the Bankruptcy Court the power to interfere with contracts between non-debtors.

7. The Bankruptcy Court's conclusions of law are to be reviewed *de novo. See, e.g., Georgia Power Co. v. Baker*, 830 F.2d 163, 165 (11th Cir.1987). As noted in paragraph 2 above, the facts in this appeal are not contested. The issues on appeal are purely issues of law.

8. This case arises out of a tension between the Bankruptcy Code, which gives bankruptcy judges wide-ranging powers to protect debtors, and the very strong policy of commercial law to uphold the sanctity and independence of letters of credit.

*Discussion*

■ 9. The Bankruptcy Court lacked subject matter jurisdiction to enjoin payment or distribution of proceeds under the letter of credit contracts to which the Debtors were not parties. 28 U.S.C. §§ 1334 and 157 confer jurisdiction only with regard to contracts or affairs of the Debtors and not to contracts or disputes between third parties. *United States v. Huckabee Auto Co.*, 783 F.2d 1546 (11th Cir.1986); *In re Zenith Laboratories, Inc.*, 104 B.R. 667 (Bankr.D.N.J.1989). The Court holds that neither the statutory jurisdictional provisions nor the provisions of the Bankruptcy Code cited by the Debtors confer power on the Bankruptcy Court to enter the orders below.

■ 10. This Circuit has stated clearly its endorsement of the principle that a letter of credit is a separate contract, independent of the underlying obligations or transactions that gave rise to its issuance, and that strict adherence to this principle is necessary to protect the integrity of letters of credit as a valuable commercial tool. *In re Air Conditioning, Inc. of Stuart*, 72 B.R. 657 (S.D.Fla.1987), *aff'd in pertinent part*, 845 F.2d 293 (11th Cir.), *cert. denied*, 488 U.S. 993, 109 S.Ct. 557, 102 L.Ed.2d 584 (1988); *Pro–Fab, Inc. v. Vipa, Inc.*, 772 F.2d 847 (11th Cir.1985); *East Girard Savings Association v. Citizens National Bank and Trust Co. of Baytown*, 593 F.2d 598 (5th Cir.1979).\* Other courts also have strongly endorsed this principle. *Compton Corp. v. Blue Quail Energy, Inc. (In re Compton)*, 831 F.2d 586 (5th Cir.1987), *remanded on other grounds*, 835 F.2d 584 (1988); *Zenith, supra.* The letters of credit here were contracts separate and independent from the indentures between the Indenture Trustee and the Authorities and the reimbursement agreements between Prime and the issuing banks. The Bankruptcy Court did not have jurisdiction to interfere with these separate and independent contracts to which the Debtors were not parties.

■ 11. The Debtors argue that it would exalt form over substance to consider the debt obligations here to be those of the public authorities that issued the bonds, and not obligations of the Debtors themselves. The Debtors thereby seek to be considered as parties to the bond indentures and to assert that the notices of acceleration based on their bankruptcy filing were violations of the automatic stay, 11 U.S.C. Sec. 362(a), and unenforceable under the anti-*ipso facto* clause, § 365(e), citing *In re Texaco*, 73 B.R. 960 (Bankr. S.D.N.Y.1987). But *Texaco* is easily distinguishable: it involved a direct obligation of the debtor, not municipal bonds issued by public authorities, and also involved an attempt to alter rights of the beneficiaries under the indenture with Texaco, not to affect rights under a letter of credit to which Texaco was not a party. The Court adheres to the analysis in *In re Zenith, supra*, that, in these circumstances, the indentures were neither executory nor contracts of the Debtors. Furthermore, the Court holds that even if the Debtors were correct in their assertion that they should be considered parties to the indentures, they have not asserted and cannot assert

---

\* Opinions decided in the Fifth Circuit prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

that they are parties to the letters of credit. The Bankruptcy Court is not empowered to interfere with a contract between non-debtors because it perceives that carrying out the contract could adversely affect the estate. *U.S. v. Huckabee Auto Co., supra.* The notices of acceleration sent by the Indenture Trustee were not intended to obtain property of Prime or to collect payment from Prime. They were a procedural device under the indenture, not required by the letter of credit contracts, and do not rise to a level that violated the automatic stay.

12. The draws on the letters of credit did not violate § 541. The transactional documents disclose that the banks issuing the letters of credit were collateralized at the outset of the transactions many years ago, so that no claim of preference under 11 U.S.C. § 547 is presented as in *Air Conditioning* and *Compton, supra.* Section 1124 does not confer substantive rights or authorize the interference with the letters of credit caused by the Bankruptcy Court's orders.

13. This Court is sympathetic to the objective of the Bankruptcy Court to assist Prime by avoiding the payment of higher interest to the banks that issued the letters of credit and perhaps permitting Prime to reinstate the unpaid debt. Although Congress gave this Court and the Bankruptcy Court expansive powers to protect debtors, no provision of law permits interference with letter of credit contracts to which no debtor is a party. Undoubtedly the Bankruptcy Court believed that the bondholders were not harmed because the letters of credit had been reinstated and Prime was continuing to pay interest. But the bondholders' bargain was to receive payment of all they were owed if there was a bankruptcy filing and to shift to the issuing banks the burden and risk of participating as creditors in bankruptcy proceedings. These bondholders justifiably expected, consistent with the purposes of the letters of credit, to be out of the picture once Prime filed under Chapter 11. Prime entered into public agency financing transactions years ago to obtain funds at a favor-

able rate, and cannot alter the form of those transactions now to achieve other ends. *In re Zenith, supra; In re Diamond Machine Co.,* 95 B.R. 255 (Bankr. D.Me.1988). This Circuit and many other courts have emphasized the public interest that letters of credit serve. *Pro–Fab, supra; East Girard, supra.* In order for letters of credit to accomplish their intended purpose of shifting the risk of loss from the bondholders to the banks who issued the letters of credit, there must be certainty of timely payment by those banks upon an event of default without the interference of the courts. *Air Conditioning, supra.*

Accordingly, it is hereby ORDERED that:

1. The orders entered by the Bankruptcy Court, appealed from herein, are reversed as contrary to law, and

2. the adversary proceeding instituted by the Debtors in the Bankruptcy Court against First Fidelity and Manufacturers Hanover Trust Company is dismissed for lack of subject matter jurisdiction.

DONE and ORDERED.