In re Vance A. and Sharon F. STAYNER, Debtors.

Vance A. and Sharon F. STAYNER, Plaintiffs,

v.

VILLAGE OF SUGAR GROVE, et al., Defendants.

Bankruptcy No. 93 B 17766.
Adv. No. 94 A 01943.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Aug. 30, 1995.

Charles J. Myler, G. Alexander McTavish, Richard J. Larsen, Myler Ruddy & McTavish, Aurora, IL, for plaintiffs.

Karen R. Goodman and Paul C. Marengo, Hinshaw & Culbertson, Chicago, IL, for Certain Bondholder defendants.

Bernard K. Weiler, Mickery Wilson Weiler & Renzi, Aurora, IL, for defendant Village of Sugar Grove.

### *MEMORANDUM OPINION ON DEFEN-DANT-BONDHOLDERS' MOTION TO DISMISS COUNT I*

JACK B. SCHMETTERER, Bankruptcy Judge.

### *INTRODUCTION*

This Adversary proceeding relates to the bankruptcy case filed by debtors Vance A. Stayner and Sharon F. Stayner ("Debtors") under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (1995).

Circumstances giving rise to this proceeding spring from a series of municipal bonds issued by the Village of Sugar Grove, Kane County, Illinois ("Village" or "Sugar Grove"). In September 1990, in an attempt to promote commercial development within its boundaries, Sugar Grove designated a parcel of commercial real estate known as Sugar Grove Research Park ("Research Park") a special service area. Sugar Grove was thereby empowered under Illinois law to make certain improvements and provide special services to Research Park not available to the entire municipality. To finance these improvements and services, Sugar Grove raised $3.745 million through the issuance and sale of municipal revenue bonds ("SSA bonds"). Under Illinois law, those bonds were to be repaid solely through levy of annual non-recourse *ad valorem* taxes on all taxable property in Research Park ("SSA taxes").

Debtors, husband and wife, own a majority of the lots in Research Park. Unable to satisfy resulting SSA taxes as payment came due, they filed jointly for bankruptcy relief on August 23, 1993. Their proposed Plan seeks in part to modify repayment terms for SSA taxes past due and future annual SSA taxes scheduled when the bonds were issued, but not yet levied.

Sugar Grove has objected to the Plan's proposed treatment of SSA taxes. In response, Debtors' filed the instant two-count Amended Complaint. Count I seeks declaratory judgment as to the existence, nature and extent of claims held by Sugar Grove and the Kane County Collector and the extent to which Debtors may restructure or impair those claims in their Plan under 11 U.S.C. § 1123(a)(5) and (b)(1) (1995). Count II seeks a determination as to the validity, priority and extent of liens held by Sugar Grove, the Kane County Collector, and alleged creditors claiming liens against real property in Research Park, *see* Fed. R.Bankr.P. 7001(2), (9), 3012 (1995), and a determination of their secured or unsecured status under 11 U.S.C. § 506(a) (1995).

Certain bondholders ("Movants") have moved to dismiss Count I under Fed.R.Civ.P. 12(b)(6) (1995), asserting that this Court lacks subject matter jurisdiction over the claims contained therein. For reasons stated herein, that motion is by separate order denied.

### *FACTS AS PLEADED*

For purposes of the instant motion, the following well pleaded facts are deemed admitted:

Defendant Village of Sugar Grove is a municipal corporation organized under the laws of the State of Illinois. On or about September 24, 1990, Sugar Grove passed an ordinance (no. 501) designating Research Park a special service area under applicable Illinois law. Research Park is a parcel of commercial real estate encompassing roughly 100 acres and subdivided into 34 lots, 11 of which are improved with industrial buildings. Debtors beneficially owned 28 of the 34 lots and ten of the 11 buildings. Defendants Sam Beiriger, Jan Falkner, Pat Lynn Brennan, West Elk Partnership, Larry Cook, and Con-

tinental Colloid Corporation held title to the remaining six lots and building.

As a means to finance the proposed special services and improvements, Sugar Grove further approved the subsequent issuance and sale of SSA bonds in an amount not to exceed $3.5 million (ord. no. 495). Debtors allege that the SSA bonds were limited obligations, payable solely through levy of direct annual *ad valorem* SSA taxes against all taxable property in Research Park, as directed by Illinois law. *See generally* Illinois Special Service Area Tax Law, 35 ILCS 200/27–5 *et seq.* (as amended January 1, 1994).

Pursuant to the aforesaid ordinances, Sugar Grove thereafter passed a series of four bond ordinances authorizing the issuance and sale of SSA bonds in the amount of $3.745 million. That same day, Sugar Grove first authorized issuance of SSA bonds in the principal amount of $250,000.00 (the "1990A Bonds"). On May 6, 1991, Sugar Grove authorized issuance of SSA bonds in the principal amount of $750,000.00 (the "1991B Bonds"). On November 11, 1991, Sugar Grove authorized issuance of SSA bonds in the principal amount of $1,050,000.00 (the "1991C Bonds"). Finally, on June 22, 1992, Sugar Grove authorized issuance of SSA bonds in the principal amount of $1,695,-000.00 (the "1992A Bonds"). At the time of filing this Adversary, Research Park SSA bonds were held by roughly 40 bondholders now named as defendants in Debtors' Amended Complaint.

Debtors allege that each bond ordinance made a present levy of a direct annual *ad valorem* SSA tax upon all taxable property within Research Park equal to the scheduled principal and interest payment obligations due on each of the bond issues. They set forth composite debt service schedules in their Complaint which suggest that considerable debt service payments will continue to accrue annually through at least the year 2007. They further assert that the bond ordinances pledged the taxes so levied solely to repayment of the bonds. Each bond ordinance allegedly provided that any deficiency in payment in a given year was to be added to and levied with the amount of the next

annual payment against all taxable property within Research Park. The ordinances allegedly further provided that any surplus not used in completion of the improvements provided for and any other revenue received by Sugar Grove in connection with the project would be first used to retire of the bonds. Finally, Debtors plead that each bond ordinance subsequent to the first ordinance provided that the lien of the taxes levied thereunder was to be coequal with the lien of taxes levied under previous bond ordinances. (They have not, however, attached copies of the bond ordinances, certificates, or otherwise introduced evidence to support their allegations as to terms and conditions of the bonds.)

## PROCEDURAL HISTORY

On August 23, 1993, Debtors voluntarily filed their joint Chapter 11 petition. They have since served as debtors-in-possession pursuant to 11 U.S.C. §§ 1107–08 (1995). On June 21, 1994, Debtors filed their proposed Plan with this Court. The Plan seeks in part to restructure repayment terms on SSA taxes already levied, past due and owing, and to modify Debtors' obligations on future annual SSA taxes that were scheduled but have not yet been levied. Sugar Grove filed an objection to the Plan's proposed treatment of SSA taxes on October 31, 1994. The Village asserts that Debtors lack authority under the Bankruptcy Code to restructure repayment terms on the SSA bonds because the SSA taxes are non-recourse obligations and because neither the bondholders nor the Village are creditors of Debtors' estate. They further contend that any attempt to restructure taxes scheduled but not levied would interfere with the police powers of a local government entity to levy taxes to the extent permitted by state and local law.

In response, on April 5, 1994, Debtors filed the instant two-count Amended Complaint, naming as defendants: Sugar Grove; the Kane County Collector; alleged creditors claiming liens against real property in Research Park; all current bondholders; and owners of the remaining six lots in Research Park. Count I seeks declaratory judgment as to the existence, nature and extent of

claims held by Sugar Grove and the Kane County Collector arising from general property taxes past due and SSA taxes past due, and the extent to which the Plan may restructure or impair those claims under 11 U.S.C. § 1123(a)(5) and (b)(1). Count II seeks a determination as to the validity, priority and extent of liens held by Sugar Grove, the Kane County Collector, and alleged creditors claiming liens against real property in Research Park pursuant to Fed. R.Bankr.P. 7001 and 3012, and a determination of their secured or unsecured status pursuant to 11 U.S.C. § 506(a).

Certain SSA bondholders ("Movants") moved to dismiss Count I under Fed.R.Civ.P. 12(b)(6), asserting that this Court lacks subject matter jurisdiction over the claims contained therein. Movants contend that, because this Court lacks subject matter jurisdiction over the claims as they pertain to SSA bondholders, Count I should be dismissed for failure to state a claim upon which relief should be granted under Fed.R.Civ.P. 12(b)(1) (1995) (applicable under Fed. R.Bankr.P. 7012(b) (1995)). Alternatively, this Court could dismiss Movants from this Adversary for lack of subject matter jurisdiction pursuant to Fed.R.Bankr.P. 7019 (1995).

### STANDARDS FOR MOTION TO DISMISS

For a defendant to prevail on its motion to dismiss, it must appear from the complaint that the plaintiff can prove no set of facts which would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101– 102, 2 L.Ed.2d 80 (1957); *Gorski v. Troy,* 929 F.2d 1183, 1186 (7th Cir.1991). The issue is not whether a plaintiff will ultimately prevail, but whether it has pleaded a cause of action sufficient to entitle it to offer evidence in support of its claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Perkins & Gaynor v. Silverstein,* 939 F.2d 463, 466 (7th Cir.1991).

■ When reviewing a motion to dismiss, the court must ordinarily take all well-pleaded facts alleged in the pleadings as true and must further construe the pleadings and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party.

*Gorski,* 929 F.2d at 1186; *Prince v. Rescorp Realty,* 940 F.2d 1104, 1106 (7th Cir.1991). However, where a party properly raises a factual question concerning subject matter jurisdiction, the court is not bound to accept as true allegations of the complaint which tend to establish jurisdiction. *First Nat'l Bank of Chicago v. Steinbrink,* 812 F.Supp. 849, 852 (N.D.Ill.1993) (Zagel, J.) (*citing Grafon Corp. v. Hausermann,* 602 F.2d 781, 783 (7th Cir.1979)). Allegations in the complaint must be considered in conjunction with any other evidence submitted on the issue of subject matter jurisdiction. *Id.* Moreover, any conflict in evidence submitted must be viewed in light of the fact that the party pleading jurisdiction carries the ultimate burden of presenting competent factual proof of proper subject matter jurisdiction. *Id.*

Movants here have not offered evidence tending to negate those jurisdictional facts pleaded in Plaintiffs' Complaint. All well-pleaded facts in the Complaint will thus be taken as true, and the pleadings and all reasonable inferences drawn therefrom will be construed in a light most favorable to Debtors, the non-moving parties.

### DISCUSSION

■ Movants chief complaint is that Debtors, by proposing to restructure their SSA tax obligations, seek in effect to later repayment terms on the SSA bonds held by Movants despite a lack of authority under the Bankruptcy Code permitting modification of obligations or contracts to which a debtor is not a party. Movants allege that by purchasing SSA bonds they entered into contracts with the Village, as issuer of the bonds. Under applicable Illinois law, such bonds were to have been retired solely by levy of taxes upon the special services area, 35 ILCS 200/27–5 (1995), and were not to be considered indebtedness of the municipality for purposes of any limitation imposed by any law, 35 ILCS 200/27–45 (1995). Movants assert that the tax levies Debtors now seek to modify were "inextricably intertwined" with the SSA bonds and were, thus, part of the contract between Sugar Grove and the bondholders. Because Debtors were not a party to the contract, Movants contend Debt-

ors lack authority under the Bankruptcy Code to modify repayment terms on the bonds.

■ Movants have failed to demonstrate that, based upon the Complaint, Debtors can prove no set of facts which would entitle them to relief. First and foremost, despite Movants' steadfast refusal to characterize themselves as "creditors," they may hold identifiable "claims" against Debtors' estate. The Bankruptcy Code defines "claim" broadly as including a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5) (1995). The bondholders hold rights to payment that, pursuant to Illinois law and the four bond ordinances pleaded in the Complaint, can be satisfied solely by taxes levied on property within the special services area. 35 ILCS 200/27–5 (1995). Whether or not Debtors are personally liable for these tax claims is of no moment. Under § 102(2) of the Code, the phrase "claim against the debtor" includes a non-recourse claim against property of the debtor. *Johnson v. Home State Bank*, 501 U.S. 78, 85–86, 111 S.Ct. 2150, 2154–55, 115 L.Ed.2d 66 (1991). Illinois law further supports this potential characterization. Illinois Special Service Area Tax Law explicitly states that "[b]onds issued pursuant to this Article shall not be regarded as indebtedness of the municipality or county, as the case may be, for the purpose of any limitation imposed by any law." 35 ILCS 200/27–45 (1995). Further, by clear implication, the bonds should be regarded as indebtedness of the bondholders, the parties legally entitled to repayment on the bonds. Thus, Movants may be creditors of the estate and terms of repayment on their SSA bonds may therefore be modifiable to the extent permitted under 11 U.S.C. § 1123 (1995).

■ Even if Movants are deemed not to be creditors of the estate, Debtors may nonetheless still have authority under the Bankruptcy Code to restructure repayment terms on their SSA taxes. Movants rely by analogy on *First Fidelity Bank, N.A. v. Prime Motor Inns, Inc. (In re Prime Motor Inns,*

*Inc.)*, 130 B.R. 610 (S.D.Fla.1991) to argue that this Court cannot assert jurisdiction over a contract between non-debtors which affects, but does not directly involve, a debtor. *Prime Motor* is inapposite, however, to the instant case. In *Prime Motor*, the chapter 11 debtors brought a declaratory judgment action against an indenture trustee who had drawn on letters of credit issued on the debtors behalf to secure bond issues, to enjoin the trustee from distributing proceeds of the letters of credit and requiring return of the proceeds to the issuing bank. The bankruptcy court granted a preliminary injunction, which the trustee subsequently challenged on jurisdictional grounds. On appeal, the district court reversed and dismissed the proceeding for lack of subject matter jurisdiction. In so holding, the district judge emphasized that the letters of credit were separate contracts, "independent of the underlying obligations or transactions that gave rise to its issuance[.]" 130 B.R. at 613. Thus, the debtors were seeking directly to affect conduct undertaken by third parties pursuant to a contract to which debtors were not a party. Here, by way of contrast, the SSA bonds and resulting SSA taxes were, to borrow Movants' phraseology, "inextricably intertwined." Debtors seek to alter repayment terms on obligations incurred in their own name and on their own behalf. If they succeed, they will undoubtedly alter repayment terms of the SSA bonds held by Movants, but that effect is collateral to Debtors' restructuring of their own obligations.

■ Of course, the extent, if any, to which Debtors can modify repayment terms on its SSA obligations is a separate question entirely. Movants contend that because the SSA obligations are "taxes" for bankruptcy purposes, Debtors are limited in the extent to which they can modify terms of repayment on those obligations in their Plan. Debtors respond by arguing that the SSA obligations are not taxes but rather are merely "a means to pay a debt contractually or quasi-contractually incurred . . . [.]" Resp. at 12. Debtors' broad argument fails, however, in the face of clear guidance from both federal and applicable state law. For bankruptcy purposes, the question whether a given obli-

gation is a "tax" must be resolved as a matter of federal law. *Groetken v. Illinois Dept. of Rev. (In re Groetken)*, 843 F.2d 1007, 1013 (7th Cir.1988) (adopting reasoning in *In re Adams*, 40 B.R. 545, 548 (E.D.Pa. 1984)). However, state law must be referenced in order to apply the definition, and how the state treats an obligation may dictate the ultimate result. *Adams*, 40 B.R. at 547; *see Groetken*, 843 F.2d at 1013. Notwithstanding federal law, Illinois Special Service Area Tax Law is ripe with referrals to SSA obligations as "taxes." *See, e.g.,* 35 ILCS 200/27–45 (1995) (SSA bonds should be retired "by the levy of taxes ... against all the taxable real property included in the area ... or by imposition of another tax within the special service area."); 35 ILCS 200/27–75 (1995) (titled "Extension of Tax Levy"). Thus, SSA obligations are plainly "taxes" for bankruptcy purposes.

■ With respect to SSA taxes levied pre-petition, Movants inaccurately assert that Debtors are limited in the extent to which they can restructure those obligations by 11 U.S.C. § 1129(a)(9)(C) (1995). Debtors have clear authority under the Bankruptcy Code to modify tax claims levied not only prior to petition date but up until the date a plan is confirmed. To the extent pre-petition tax claims are secured, relief can be afforded under 11 U.S.C. § 1129(b)(2)(A) (1995). Debtors can further pay priority pre-petition tax claims in deferred cash payments equal to the allowed amount of the claim over a period not exceeding six years. 11 U.S.C. § 1129(a)(9)(C) (1995). General unsecured pre-petition tax claims may be discharged in a chapter 11 plan in the same manner as all other unsecured debts. *Riley v. Wis. Dept. of Rev. (Matter of Riley)*, 88 B.R. 906, 915 (Bankr.W.D.Wis.1987). Finally, all tax liabilities incurred after the petition date but prior to confirmation qualify as administrative expenses and are thus entitled to first priority in a chapter 11 plan. 11 U.S.C. § 1129(a)(9)(A) (1995).

■ With respect to those SSA taxes scheduled pre-petition but not yet levied, Debtors most likely do not have authority under the Bankruptcy Code to modify such obligations. Although neither party has proffered case law supporting its position, several bankruptcy judges have held that they lack subject matter jurisdiction to resolve post-confirmation tax liabilities. *Holly's, Inc. v. City of Kentwood (Matter of Holly's, Inc.)*, 172 B.R. 545, 562 (Bankr. W.D.Mich.1994), *aff'd on dif. grounds,* 178 B.R. 711 (W.D.Mich.1995); *In re Maley*, 152 B.R. 789, 792 (Bankr.W.D.N.Y.1992); *Allis–Chalmers Corp. v. Goldberg (In re Hartman Material Handling Sys., Inc.)*, 141 B.R. 802, 812–13 (Bankr.S.D.N.Y.1992). Absent persuasive contrary authority, those holdings will be followed here. For purposes of this Motion, this Court need not determine whether Debtors may restructure obligations deemed to have arisen post-confirmation because at least a portion of the taxes owed can be modified as they were levied pre-petition. On the limited pleadings presented, it appears this issue may become significant, as a large portion of taxes sought to be modified in the Plan will not accrue until after potential confirmation. Under Illinois law, the lien of real estate taxes attaches to real property as of January 1st of the year for which the tax levy is made. Illinois Property Tax Code, 35 ILCS 200/9–175 and 21–25 (1995). Accordingly, as of the filing date, August 23, 1993, liens of tax levies supporting the SSA bonds attached to Debtors' property only for the year 1993 and prior years. As previously noted, Debtors anticipated taxes to be levied as scheduled through the year 2007. Thus the allocation of taxes levied may become quite important at a later date in these proceedings.

However, for purposes of this Motion, this Court need only conclude that Movants have failed to demonstrate based upon the Complaint that Debtors can prove no set of facts which would entitle them to some relief.

### CONCLUSION

For reasons stated herein, Movants' Motion to Dismiss Count I of Plaintiffs' Amended Adversary Complaint is by separate order denied.