**In re WAR EAGLE CONSTRUCTION CO., INC., a corporation, Debtor.**

**H. Lynden Graham, Jr., Trustee of the Bankruptcy Estate of War Eagle Construction Co., Inc. Appellee,**

**v.**

**State of West Virginia, and Michael O. Callaghan, Secretary of the West Virginia Department of Environmental Protection,[1] Defendant.**

**CIV.A. No. 5:01–0993.**
**Bankruptcy No. 94–50371.**
**Adversary No. 98–0161.**

United States District Court,
S.D. West Virginia,
Beckley Division.

Sept. 18, 2002.

---

1. Pursuant to *Rule* 25(d), the current Secretary of the Division of Environmental Protection, Michael O. Callaghan, is substituted for the former secretary whom he succeeded. Fed.R.Civ.P. 25(d). The former title of DEP Director was changed to Secretary after Callaghan took office.

Thomas L. Clarke, West Virginia Division of Environmental Protection, Office of Legal Services, Charleston, WV, for appellants.

Julia A. Chincheck, Robert L. Burns, Jr., David E. Potters, Bowles, Rice, McDavid, Graff & Love, Charleston, WV, for appellee.

### *MEMORANDUM OPINION AND ORDER*

HADEN, Chief Judge.

Defendants/Appellants Michael O. Callaghan, Secretary of the West Virginia Division of Environmental Protection ("DEP"), and the State of West Virginia appeal two orders of the Bankruptcy Court. The first order denied Defendants' motion for summary judgment and granted the cross-motion for summary judgment filed by the debtor's Trustee, H. Lynden Graham, Jr. The second order denied Defendants' motion to dismiss based on Eleventh Amendment immunity and granted the Trustee's motion for attorneys' fees and costs. For reasons set forth below, the first judgment of the Bankruptcy Court is **REVERSED**. The second judgment is **VACATED as moot**.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

War Eagle Construction Co., Inc. ("War Eagle") conducted surface mining in West Virginia under a permit issued by DEP pursuant to the West Virginia Surface Coal Mining and Reclamation Act, *W.Va. Code* § 22–3–1, *et seq.* ("SCMRA"). The adversary proceeding below involved actions taken by the then-Director of the Division of Environmental Protection ("DEP"), in his official capacity, to revoke War Eagle's surface mining permit and declare the related reclamation bond forfeited.

As one requirement to acquire the permit, in 1988 War Eagle posted a performance bond in the amount of $98,325.00 to secure performance of its duties under the Act and its permit. *See* W. Va.Code § 22–3–11(a).[2] The bond consisted of: (a) cash totaling $33,000, which is in the possession of the Treasurer of the State of West Virginia; (b) two certificates of deposit in the amounts of $4,000 and $21,325 issued by the Bank of Man and payable to "War Eagle Construction Co., Inc. or W.Va. Department of Energy"; and (c) an irrevocable letter of credit for up to $40,000 issued by the Bank of Man and payable to the Commissioner of the Department of Energy upon demand accompanied by a Notice of Forfeiture.

On October 28, 1994 War Eagle filed for Chapter 7 bankruptcy liquidation in the United States Bankruptcy Court for the Southern District of West Virginia. Graham was appointed Trustee for the debtor. After filing bankruptcy, War Eagle ceased operations and was unable to comply with SMCRA or its permit. In March of 1995, DEP revoked the permit after War Eagle allegedly failed to respond to a Show Cause letter issued by DEP. War Eagle appealed revocation of the permit to the Surface Mine Board ("SMB") in May of 1995 and SMB remanded the case, giving

---

**2.** In 1988 surface mining reclamation bonds were performance bonds. In 1995 the statute was amended to require the posting of penal bonds.

War Eagle the opportunity to show cause why the permit should not be revoked.

Although a show cause hearing was scheduled, Trustee Graham was not given notice of the hearing. DEP later agreed to give Graham the opportunity for a show cause hearing, but it appears no such hearing took place. On May 28, 1998, then-Director Miano wrote to War Eagle, care of its Trustee:

> In view of the bankrupt-liquidated status of the permittee, the unadjudicated show cause and unabated enforcement actions over such an extended time period, I hereby find and conclude that you have failed to show cause why the operation on the above referenced permit should not be revoked. Therefore, pursuant to the West Virginia Code, 22–3–17(b), I *declare* Permit Number S–5046–88 revoked and *the associated bond forfeited.*

(Appellee's Br., Ex. C)(emphasis supplied.)

Following receipt of the May 28th declaration from Director Miano, the Trustee filed a "Petition for Appeal and Request for Stay" before the West Virginia Surface Mine Board, alleging Defendants failed to follow the prescribed procedure for revocation and forfeiture, and seeking an immediate stay of the bond forfeiture from the SMB. (Appellant's Br. at 9).

By order entered July 1, 1998, the SMB declined to enter a stay of the forfeiture of the bond, finding:

> Appellant has moved for a stay of the revocation of the permit, and the forfeiture of the bond. With respect to the forfeiture of the bond, the Bankruptcy

Court for the Southern District of West Virginia has held that "the automatic stay does apply as it relates to any action to *pursue forfeiture of the bond."* In re: Valley Carbon, Inc. v. Callaghan, Case No. 94–20246, May 28, 1996. It appears that this ruling would also apply in this case, where DEP has declared the forfeiture of the bond of a company currently in bankruptcy. Therefore, since the automatic stay applies to the bond forfeiture, it is not necessary, or proper, for the Board to take any further action.

(Appellee's Br., Ex. D, Order at 1)(emphasis added).

The Trustee then brought this adversary proceeding, asking the bankruptcy court to find DEP had violated the automatic stay when it declared the bond forfeited, to declare that action null and void, and to order DEP to turn over the bond to the bankruptcy estate. In its Answer, DEP asserted Eleventh Amendment immunity, among other defenses.[3] On cross-motions for summary judgment, the bankruptcy court held:

> Upon review of the various cash deposits and instruments constituting the Bond, the Court determines that the Bond is an asset of the bankruptcy estate of War Eagle. *See* 11 U.S.C. § 541. As such, the Bond is entitled to the protection of the automatic stay and the proceeds of such Bond may only be obtained by the Defendants upon the granting of an appropriate motion to modify the automatic stay regarding the Bond.

---

**3.** The State and DEP ("State Defendants") also counterclaimed seeking a declaration that 1) DEP's declaration of permit revocation and bond forfeiture were not subject to the automatic stay, 2) collection of the letter of credit would not violate the automatic stay, 3) modification of the automatic stay to allow

DEP to collect the balance of War Eagle's debt, 4) prohibiting the Trustee from "further unwarranted interference with DEP's enforcement of its police and regulatory power under state law," and 5) guidance as to disposition of any proceeds taken by DEP in excess of its reclamation costs.

*Graham v. State of West Virginia (In re War Eagle Construction Co., Inc.)* A.P. No. 98–0161 at 3 (Bankr.S.D.W.Va. Feb. 3, 2000)("February 3 Order"). The bankruptcy court further found the term "forfeit" in the DEP letter has "its regular meaning, and, as such, constitutes an attempt by the Defendants to take possession of the assets of the bankruptcy estate . . . and sever the Trustee's rights to such assets." *Id.* at 4. Citing its earlier decision in *In re Valley Carbon, Inc. v. Callaghan,* Case No. 94–20246 (July 1, 1998), the bankruptcy court held "no action could be taken regarding forfeiture of the bond" without DEP applying to modify the automatic stay. The court declared the bond forfeiture null, void and without force or effect. *Id.* This is the first ruling from which DEP and the State appeal.[4]

The February 3 Order also allowed the Trustee to seek attorney fees, costs, and damages, *see id.* at 5, which the Trustee did. In response, the State moved to dismiss, citing its Eleventh Amendment sovereign immunity. The Trustee opposed that motion, contending the State waived its immunity by participating in the litigation.

On August 9, 2001 the bankruptcy court held the State defendants had waived their sovereign immunity by voluntarily participating in federal court proceedings. *Graham v. State of West Virginia (In re War Eagle Construction Co., Inc.)* A.P. No. 98–0161 at 9 (S.D.W.Va. Aug. 9, 2001)("August 9 Order"). Additionally, the court concluded the DEP willfully violated the automatic stay when it declared the bond forfeited, *id.* at 11, and the Eleventh Amendment does not bar an award of attorney fees ancillary to prospective relief, *id.* at 10, and "[c]osts and attorneys' fees belong to

the category of prospective injunctive relief." *Id.* The August 9 Order denied the State defendants' motion to dismiss and granted the Trustee's motion for attorney fees and costs. This is the second order appealed from.

The Court considers these bankruptcy court orders *seriatim.*

## II. DISCUSSION

### A. Automatic Stay

▇ Filing of a bankruptcy petition automatically stays:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title[.]

11 U.S.C. § 362(a). Among the exceptions to the automatic stay are:

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such unit's police or regulatory power;

(5) under subsection (a)(2) of the section of the enforcement of a judgment *other than a money judgment,* obtained in an action or proceeding by a governmental unit to enforce such unit's police or regulatory power.

---

**4.** The State Defendants appealed the February 3 Order, however, this Court dismissed the appeal, finding it was not a final order

appealable under 28 U.S.C. § 158(a)(1). *In re War Eagle,* 249 B.R. 686 (S.D.W.Va.2000).

*Id.* at § 362(b)(4), (5)(emphasis added).[5] State actions to enforce police or regulatory powers are excepted from the automatic stay, but an exception to that exception is any enforcement of a money judgment. DEP is a government unit with power to regulate state surface mining, including the issuance and revocation of permits with their associated bonds.

The leading case on environmental exceptions to the automatic stay is *Penn Terra Ltd. v. Dep't of Envtl. Resources,* 733 F.2d 267 (3d Cir.1984). The Pennsylvania Department of Environmental Resources ("DER") sought a preliminary injunction against Penn Terra, a coal surface mining operator, to reclaim its unreclaimed mines. Penn Terra previously had filed for Chapter 7 bankruptcy protection. The bankruptcy and district courts both held this activity violated the automatic stay and amounted to an attempt to collect a money judgment. The appeals court examined the legislative history of the governmental exception to the automatic stay and found Congress explicitly intended the exception to encompass environmental regulation:

> [W]here a government unit is suing a debtor to prevent or stop violation of fraud, *environmental protection,* consumer protection, safety, or similar police or regulatory laws, *or attempting to fix damages for violation of such law,* the action or proceeding is not stayed under the automatic stay.

*Id.* at 272 (citations omitted)(emphasis added). Further explaining the exception to the exception, the legislative history provides:

> Paragraph (5) makes clear that the *exception extends to permit an injunction and enforcement of an injunction and to permit the entry of a money judgment, but it does not extend to permit enforcement of a money judgment.* Since the assets of the debtor are in the possession and control of the bankruptcy court, and since they constitute a fund out of which all creditors are entitled to share, enforcement by a government unit of a money judgment would give it preferential treatment to the detriment of all other creditors.

*Id.* (citations omitted)(emphasis added). On this basis, the appeals court reasoned the injunction sought by the DER was an exercise of its police powers, which should be broadly construed, and not a proceeding to enforce a money judgment. Instead, the appeals court characterized the action as equitable, an injunction that necessitated an expenditure of money, and required the debtor, Penn Terra, to reclaim the mine site.

The question before this Court is somewhat simpler. The initial issue, and that on which all else turns, is the nature of the action taken by DEP when it wrote: "Therefore, pursuant to the West Virginia Code, 22–3–17(b), I *declare* Permit Number S–5046–88 revoked and *the associated*

---

5. In 1999 these two subsections were consolidated into new § 362(b)(4), which provides: (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's or organization's police or regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power[.] 11 U.S.C. § 362(b)(4). Commentators agree the quoted section does not alter the operation of the former two sections. *See* William L. Norton, Jr. *Norton Bankruptcy Law and Practice 2d* § 36:18. Because both the parties and case law frequently refer to the former statutory divisions, both the current and former version are presented.

*bond forfeited."* (Appellee's Br., Ex. C)(emphasis supplied.)

### B. Forfeiture and Collection

■ *West Virginia Code § 22–3–17(b)* provides:

> If the permit is revoked, the director shall initiate procedures in accordance with rules promulgated by the director to forfeit the entire amount of the operator's bond, or other security posted pursuant to section eleven or twelve of this article, and shall give notice to the attorney general, who shall collect the forfeiture without delay[.]

W. Va.Code § 22–3–17(b); *see* 38 C.S.R. 2 § 12.4.b. As the statute provides, revocation of the permit requires initiation of forfeiture procedures: "If the permit is revoked, the director *shall* initiate procedures ... to forfeit ... the bond[.]" The DEP Director followed this requirement when he wrote, "I *declare* [the permit] revoked and the associated bond forfeited." Collection of a bond declared forfeited is a separate activity, performed by State counsel, the Attorney General, at the direction of the DEP Director. There is no indication in the record that the collection activity has ever been begun, ordered, noticed, or otherwise performed.[6]

The DEP Director *declared* the bond forfeited. This is in the nature of the *fixing* of damages and the *entry* of a money judgment, and distinguishable from the enforcement or collection of such judgment. *See supra* at II.A (citing *Penn Terra*, 733 F.2d at 272); *see also NLRB v. Evans Plumbing Co.*, 639 F.2d 291 (5th Cir.1981)(action could proceed as far as entry of judgment for back pay under the § 362(b) exception); *United States v. Sugarhouse Realty, Inc.*, 162 B.R. 113 (E.D.Pa.1993)(government may enter, but not enforce, a money judgment against a debtor for failing to complete a cleanup pursuant to a consent decree).

This distinction also parallels the commonly recognized difference between declaring a performance bond in default and seeking to collect on the bond. Courts have recognized this difference in the context of the automatic stay, even where the actor declaring default is not a government unit. *See e.g., Am–Haul Carting, Inc. v. Contractors Cas. and Surety Co.*, 33 F.Supp.2d 235 (S.D.N.Y.1998)(automatic stay does not prohibit or nullify general contractor's default and termination letter to subcontractor in bankruptcy); *In re Sixteen to One Mining Corp.*, 9 B.R. 636 (Bankr.D.Nev.1981)(automatic stay does not cover giving notices of default as long as there is no attempt to claim possession).

The bankruptcy court in *Valley Carbon, Inc. v. Callaghan (In re Valley Carbon, Inc.)*, A.P. No. 94–0161 (Bankr.S.D.W.Va. 1996), recognized the same distinction between declaring a bond forfeited and seeking to collect the forfeited bond. DEP declared Valley Carbon's surface mining permit revoked and its bond forfeited. That action was appealed to the Surface Mine Board ("SMB"), which upheld DEP. The SMB further allowed DEP could "pursue forfeiture of the related bond." *Id.* at 2 (citing SMB Order). The resulting adversary proceeding sought to reinstate the permit, place the bond back in full force and effect, and apply the automatic stay. The bankruptcy court considered the governmental exception to the automatic stay

---

**6.** In their counterclaim, the State defendants requested modification of the automatic stay to allow them to collect that portion of the bond, excepting the letter of credit, they acknowledge is part of the bankruptcy estate.

The bankruptcy court did not respond to this request.

Appellants state they have taken no actions to *collect* the forfeited bond. (Appellants' Br. at 8.)

in light of *Penn Terra* and that line of cases. The court found DEP's action in revoking the permit and declaring the bond forfeited fell within the government exception of § 362(b)(4). In explanation, the bankruptcy court held, "The government is not collecting a money judgment as the bond has yet to be forfeited."[7] *In re Valley Carbon, Inc.*, Case No. 94–20246, 6 (Bankr.S.D.W.Va. May 28, 1996). The court further held, however, *contra* the SMB, that "the automatic stay does apply as it relates to any action to pursue forfeiture of the bond." *Id.* at 7. That is, DEP's actions declaring the permit revoked and the bond forfeited were allowable outside the automatic stay, until it sought to collect on the bond.

For all these reasons, the Court **FINDS** and **CONCLUDES** that DEP's action in declaring War Eagle's performance bond forfeited did not violate the automatic stay of 11 U.S.C. § 362. The declaration of forfeit is analogous to the entry of judgment or the declaration of default. None of these constitutes the collection of a money judgment, an activity that *is* automatically stayed upon the filing of bankruptcy. Because DEP's declaration did not violate the automatic stay, the bankruptcy court had no authority to nullify or void it. Accordingly, the bankruptcy court's February 3 Order is **REVERSED**. The DEP Director's declaration of forfeiture of War Eagle's performance bond is **REINSTATED**.

Because the Court grants the State Defendants' motion for summary judgment, the bankruptcy court's denial of their subsequent motion to dismiss on Eleventh Amendment grounds is **VACATED as moot**. Similarly, the Trustee's motion for attorney fees, costs, and damages is no longer viable and the August 9 Order granting such relief is **VACATED**. This action is **REMANDED** to the court below for consideration of the State Defendants' counterclaim requests for relief from the automatic stay to collect the bond proceeds and direction on disposition of bond proceeds, if any, not needed for reclamation. On remand the bankruptcy court shall enter summary judgment for the State Defendants and deny the Trustee's motion for summary judgment.

### C. Letter of Credit

■ There remains one issue on appeal, the proper attribution of the letter of credit, which constitutes a large part of the War Eagle performance bond. The irrevocable letter of credit is a contract between The Bank of Man[8] and the predecessor agency to the DEP. The bankruptcy court decided this issue virtually *sub silentio* when it held, "Upon review of the various cash deposits and instruments constituting the Bond, the Court determines that the Bond is an asset of the bankruptcy estate of War Eagle." February 3 Order at 3.

■ Performance bonds generally are property of the bankruptcy estate. *See e.g. In re Pentell*, 777 F.2d 1281, 13 B.C.D. 1247, 1249 (7th Cir.1985); *In re McCulloch & Son, Inc.*, 30 B.R. 7, 10 B.C.D. 752 (Bankr.D.Or.1983). Letters of credit, however, enjoy a separate status. A widely recognized principle holds a letter of credit

---

**7.** This ambiguous use of "forfeit" may illuminate the parties' differing views of this decision. The bankruptcy court distinguishes, but does not clarify its distinction, between a declaration of forfeit and collection of the forfeited proceeds. Both acts are denominated "forfeitures." The first does not violate the automatic stay, the second does because it is a collection of a money judgment.

**8.** In 1996 the issuing bank was changed to The Huntington National Bank of Columbus, Ohio. *See* Appellant's Br., Ex. 4.

to be a "separate contract, independent of the underlying obligations or transactions that gave rise to its issuance." *In re Prime Motor Inns, Inc.*, 130 B.R. 610, 613 (S.D.Fla.1991). Strict adherence to this principle "is necessary to protect the integrity of letters of credit as a valuable commercial tool." *Id.* (citations omitted).

The basic financial relationships which underpin a letter of credit are discussed at some length in the case of *Matter of Compton Corp.*, 831 F.2d 586 (5th Cir. 1987), *rehearing and remand*, 835 F.2d 584 (5th Cir.1988). The initial *Compton* opinion explained:

> All a beneficiary has to do to receive payment under a letter of credit is to show that it has performed all the duties required by the letter of credit. Any disputes between the beneficiary and the customer do not affect the issuer's obligation to the beneficiary to pay under the letter of credit.

*Id.* at 670–71.

 It is well established that a letter of credit and the proceeds therefrom are not property of the debtor's estate under 11 U.S.C. § 541. *See In re Zenith Laboratories, Inc.*, 104 B.R. 667 (Bankr.D.N.J.1989)(citing *In re W.L. Mead, Inc.*, 42 B.R. 57 (Bankr.N.D.Ohio 1984); *In re Leisure Dynamics, Inc.*, 33 B.R. 171 (Bankr.Minn.1983); *In re North Shore & Central Illinois Freight Co.*, 30 B.R. 377 (Bankr.N.D.Ill.1983); *In re M.J. Sales & Distributing Co.*, 25 B.R. 608 (Bankr.S.D.N.Y.1982)). When the issuer honors a proper draft under a letter of credit, it does so from its own assets and not from the assets of its customer who caused the letter of credit to be issued. *Id.* Because the letter of credit and its proceeds are not property of the debtor's estate, they are not subject to the automatic stay. Accordingly, the bankruptcy court erred when it determined that all of the War Eagle bond was property of the bankruptcy estate.

### III.  CONCLUSION

The February 3 Order is **REVERSED** and the DEP Director's declaration of forfeiture of War Eagle's performance bond is **REINSTATED**. The August 9 Order is **VACATED**. This action is **REMANDED** to the court below for consideration of the State Defendants' counterclaim requests for relief from the automatic stay to collect the remaining bond proceeds and direction on disposition of bond proceeds, if any, not needed for reclamation.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and the Honorable Judge Ronald G. Pearson and to publish it on the Court's website at http://www.wvsd.uscourts.gov.